# IN THE SUPREME COURT OF TEXAS

═══════════
No. 17-0724
═══════════

REY GARZA, PETITIONER,

v.

ROXANA REGALADO HARRISON AND JOSEPH SANTELLANA, INDIVIDUALLY AND AS
REPRESENTATIVE OF THE ESTATE OF JONATHEN ANTHONY SANTELLANA, DECEASED,
RESPONDENTS

═══════════════════════════════════════
ON PETITION FOR REVIEW FROM THE
COURT OF APPEALS FOR THE FOURTEENTH DISTRICT OF TEXAS
═══════════════════════════════════════

**Argued January 10, 2019**

JUSTICE GUZMAN delivered the opinion of the Court.

JUSTICE BOYD filed a concurring opinion, in which JUSTICE LEHRMANN joined.

The election-of-remedies provision in section 101.106(f) of the Texas Tort Claims Act requires courts to grant a motion to dismiss a lawsuit against a governmental employee sued in an "official capacity" but allows the governmental unit to be substituted for the employee.[1] By adopting section 101.106(f), the Legislature has effectively mandated that only a governmental unit can be sued for a governmental employee's work-related tortious conduct.[2] In this case, an

---

[1] TEX. CIV. PRAC. & REM. CODE § 101.106(f).

[2] *Texas Adjutant Gen.'s Office v. Ngakoue*, 408 S.W.3d 350, 352 (Tex. 2013); *Franka v. Velasquez*, 332 S.W.3d 367, 382-85 (Tex. 2011).

off-duty law enforcement officer fatally shot a suspect during the course of an attempted arrest outside his primary jurisdiction. The decedent's parents sued the officer in his individual capacity for wrongful death, but the officer asserts the action is actually an official-capacity suit that must be dismissed under the Act.

As defined in section 101.106(f), a governmental employee is sued in an official capacity when the suit (1) is "based on conduct within the general scope of that employee's employment" and (2) "could have been brought under [the Act] against the governmental unit."[3] Here, the trial court denied the officer's dismissal motion, citing a fact issue as to whether the officer was acting as a peace officer or as a security guard for his landlord at the time of the shooting. The court of appeals affirmed, but applied a textually unsupportable distinction in holding that, as a matter of law, the officer could not have been doing his job as a peace officer because a peace officer operating extraterritorially would merely be authorized—not obligated—to make an arrest under the extant circumstances.[4]

We reverse the court of appeals' judgment and render judgment dismissing the suit against the officer. The scope-of-employment inquiry under section 101.106(f) focuses on whether the employee was doing his job, not the quality of the job performance.[5] Even if work is performed wrongly or negligently, the inquiry is satisfied if, when viewed objectively, "a connection [exists] between the employee's job duties and the alleged tortious conduct."[6] A connection exists

---

[3] TEX. CIV. PRAC. & REM. CODE § 101.106(f).

[4] 531 S.W.3d 852, 860 (Tex. App.—Houston [14th Dist.] 2017).

[5] *Laverie v. Wetherbe*, 517 S.W.3d 748, 753 (Tex. 2017).

[6] *Id*.

between the defendant law enforcement officer's job responsibilities and the alleged tort because he was exercising a statutory grant of authority to make a warrantless arrest for a crime committed in his presence—authority he possessed solely through his governmental employment.

## I. Background

The City of Navasota Police Department hired and commissioned Rey Garza as a licensed peace officer. Though employed in Grimes County, Garza resided at an apartment complex in neighboring Harris County. In exchange for rent concessions, and with the police department's permission, Garza agreed to work for the apartment complex on a part-time basis as a "Courtesy Patrol Officer."[7] In that capacity, Garza's "primary responsibility" was to deter criminal activity by being "highly visible." He was also responsible for circulating notices to the residents; inspecting the property for broken lights and other safety concerns; patrolling the property for parking violations, trespassers, vandalism, and other security issues; and documenting his observations in written reports to the apartment-complex manager.

As stated in the apartment complex's policies and procedures, courtesy officers are not classified as police officers by the complex; are not required or authorized to pursue and apprehend criminals; and if a crime occurs, should "[r]eport to the police or the Courtesy Patrol Officer's supervisor." Courtesy officers may question people on the property but apartment-issued guidelines prohibit them from making arrests, searching suspects, and carrying or using deadly weapons. The policy further warns that courtesy officers do not have "[t]he same job duties as

---

[7] The record does not indicate whether Garza was assigned to work on premises at specific times or for a set number of hours. The Navasota Police Department's application for permission to do extra work noted only that Garza would be performing his courtesy-officer work on his "off days."

3

police officers" or "[t]he same powers as police officers, according to the law." The policy includes an acknowledgement—which Garza may or may not have signed—affirming the understanding that "while providing [courtesy patrol] services" for the apartment complex, courtesy officers are "acting at the company's authority in the capacity of a Patrol/Courtesy Officer and not as an active/off duty Police Officer in the State of Texas."[8]

The tragic encounter giving rise to this wrongful-death action occurred when Garza, already off duty from his Navasota Police Department job, arrived at the apartment complex after running personal errands one afternoon. Garza parked his car next to a vehicle he did not recognize and saw Jonathen Santellana, an individual he did not recognize, descending the staircase of one of the apartment buildings. Garza, who was dressed casually in plain clothes, crossed paths with Santellana and observed him staring at something in his hand. Garza did not see the object, but he suspected it was drugs because Santellana had been in an area of the complex where Garza had frequently detected the odor of marijuana and had observed unusually heavy foot traffic.

Garza neither engaged nor detained Santellana, but due to his suspicions, he continued on to his apartment to retrieve his firearm and then returned to his own vehicle, where he saw Santellana and a female passenger sitting in the adjacent car. As Garza stood between the passenger side of his vehicle and the driver's side of Santellana's, he witnessed Santellana putting marijuana into a pill bottle. Santellana's possession of marijuana has not been disputed, but

---

[8] Garza denies receiving the Courtesy Patrol Officer Policies and Procedures or signing the acknowledgement form. Though the signature on the acknowledgment bears no resemblance to Garza's signature on other documents in the record, he allowed that his fiancée may have signed the form on his behalf and with his permission.

4

Garza's account of what happened next is contested and, in certain respects, controverted by evidence.

According to Garza, once he viewed Santellana engaged in a crime, he displayed his police badge and identification card to Santellana through the driver's side window, identified himself as a police officer, and asked Santellana to step out of the car. Garza says Santellana ignored the officer's commands and instead started the vehicle. Fearing he would be pinned between the vehicles, Garza claims he opened the driver's door and reached in to turn the ignition off, but with the driver's door open, the vehicle started moving in reverse, scraping the side of Garza's vehicle. To avoid getting run over or crushed, Garza reportedly hung onto the door and "back-pedal[ed]" while attempting to grab the car keys. As Garza tells it, he drew his weapon and fired two shots through the side window in an attempt to stop Santellana. Garza expended several additional rounds as Santellana continued backing the car out of the parking spot.

Controverting Garza's account, a third-party witness averred that Garza fired through the windshield from a distance as Santellana attempted to drive away. The witness recounted that after hearing the first two shots, she spotted the shooter on the sidewalk, watched him walk toward the vehicle and stop about two feet in front of it near the passenger side, and then fire three to five shots through the windshield while holding the gun with both hands.

What is not in dispute is that, Santellana, who had been shot twice, managed to drive a short distance before crashing his vehicle into another resident's truck. He later died from his wounds.[9]

Santellana's parents, Roxana Regalado Harrison and Joseph Santellana (collectively, the plaintiffs), sued Garza and the apartment complex in state court for wrongful death[10] and filed a section 1983 excessive-force complaint against Garza and the City of Navasota in federal court.[11] In the state-court lawsuit, the plaintiffs alleged Garza was working as an employee for the apartment complex at the time of the incident, and in the federal-court lawsuit, the plaintiffs alleged Garza acted under color of state law and in accordance with Navasota Police Department policies, customs, and training that were constitutionally defective.[12]

After engaging in discovery in the state-court action, Garza filed a motion to dismiss based on the election-of-remedies provision in section 101.106(f) of the Tort Claims Act, which provides:

> If a suit is filed [1] against an employee of a governmental unit [2] based on conduct within the general scope of that employee's employment and [3] if it could have been brought under [the Tort Claims Act] against the governmental unit, the suit is considered to be against the employee in the employee's official capacity only. On the employee's motion, the suit against the employee shall be dismissed

---

[9] After a criminal investigation, a grand jury returned a no bill of indictment against Garza. "A Grand Jury's no-bill is merely a finding that the specific evidence brought before the particular Grand Jury did not convince them to formally charge the accused with the offense alleged." *Rachal v. State*, 917 S.W.2d 799, 807 (Tex. Crim. App. 1996) (en banc).

[10] *See* TEX. CIV. PRAC. & REM. CODE § 71.002.

[11] *See* 42 U.S.C. § 1983.

[12] The federal suit alleged: "The actions and conduct of Rey Garza are the result of a policy, practice, custom, and deliberate indifference on the part of Defendant City of Navasota. Specifically, at issue are the City of Navasota's 'Police Related Extra Employment' policy and 'Use of Force' policy."

6

unless the plaintiff files amended pleadings dismissing the employee and naming the governmental unit as defendant on or before the 30th day after the date the motion is filed.[13]

In response, the plaintiffs did not amend their state-court pleadings to dismiss Garza and name the City of Navasota as a defendant, as section 101.106(f) allows. Instead, they argued section 101.106(f) is inapplicable because Garza was acting in the scope of his employment as a courtesy patrol officer for the apartment complex, not as a peace officer under his commission with the Navasota Police Department.

The trial court denied Garza's motion to dismiss citing a fact issue about whether Garza "was acting within the authorized course and scope of a police officer or as an employee of [the apartment complex] at the time of the occurrence at issue." On interlocutory appeal,[14] the court of appeals affirmed, but for different reasons.[15]

The only disputed issue before the appeals court was whether Garza was acting in the general scope of his employment as a peace officer when he shot Santellana.[16] The court held that, as a matter of law, Garza was neither performing the duties of his employment nor a task lawfully assigned to him within the meaning of section 101.106(f).[17] Raising the issue *sua sponte*, the appeals court distinguished between "an employee's **authority** to perform an action" and "his **duty**

[13] TEX. CIV. PRAC. & REM. CODE § 101.106(f).

[14] *Id.* § 51.014(a)(5); *see Franka v. Velasquez*, 332 S.W.3d 367, 371 n.9 (Tex. 2011) (explaining that in seeking dismissal under section 101.106(f), a defendant is asserting a claim of governmental immunity).

[15] 531 S.W.3d 852, 861 (Tex. App.—Houston [14th Dist.] 2017).

[16] *Id.* at 857.

[17] *Id.* at 860.

to perform an action he has been given authority to perform."[18]  The court concluded that only the latter—an obligation to act—falls within section 101.106(f)'s scope and Garza had authority, but no duty, to make an arrest under the circumstances presented.[19]

The court noted that article 14.03 of the Code of Criminal Procedure may have imbued Garza with authority to arrest Santellana despite being outside the Navasota Police Department's jurisdiction; however, he was not statutorily obligated to do so, and the Navasota Police Department had not specifically assigned that task to Garza.[20]  Thus, even though acknowledging peace officers have authority to act extraterritorially to stop crime occurring in their presence, the court concluded that an officer doing so is necessarily acting in a non-official capacity if the governmental employer has not directed the officer to make such an arrest.[21]

At the same time, the court disclaimed any intent to categorically bar section 101.106(f)'s application to police officers operating outside their primary jurisdiction, explaining that whether section 101.106(f) applies "is a context-specific inquiry that depends on the circumstances of the particular case and whether those circumstances dictate that the officer had a duty to act."[22]  The court did not elaborate on what circumstances might be sufficient for purposes of section 101.106(f), holding only that those presented here were not.[23]  The court implied that such a duty

---

[18] *Id.* at 858.

[19] *Id.* at 858-59, 861 & n.3.

[20] *Id.* at 858-60 (citing TEX. CODE. CRIM. PROC. art. 14.03(d), (g)(2)).

[21] *See id.*

[22] *Id.* at 860-61.

[23] *Id.* at 861.

8

could arise under article 6.06 of the Code, but implicitly concluded Garza's attempted arrest of Santellana did not fall within article 6.06's ambit.[24]

On petition for review to this Court, the central issue is whether section 101.106(f) extends only to a governmental employee's nondiscretionary duty to act or also encompasses authorized responsibilities, including discretionary authority statutorily conferred by virtue of a peace officer's commission.

Garza and supporting amici contend that all of a police officer's authorized job responsibilities are necessarily within the scope of an officer's employment,[25] which Garza notes must be the case because the authority to make an arrest is often discretionary.[26] According to Garza and the amici, the court of appeals misconstrued section 101.106(f) by improperly and arbitrarily bifurcating police "duty" from police "authority." This construction, they say, is textually and pragmatically insupportable and imperils public safety by creating a perverse incentive for police to sit on the sidelines rather than acting on their authority to enforce the law.[27]

---

[24] *Id.* ("Texas law recognizes certain circumstances under which an officer outside of his or her jurisdiction has a duty to act. *See, e.g.*, TEX. CODE CRIM. PROC. ANN. art. 6.06 (officers are duty-bound to prevent the commission of an offense against the person or property of another). We are not aware of any statutory duty to act that would apply to the specific facts of this case . . . .").

[25] The Houston Police Officers' Union, the People for the Combined Law Enforcement Association of Texas, the State Prosecuting Attorney, the Texas City Attorneys Association, the Texas Municipal League, and the Texas Municipal Police Association have filed briefs asserting that so long as a police officer is acting within legislatively sanctioned authority to make an arrest, that conduct is within the course and scope of employment as a matter of law.

[26] *See, e.g.*, TEX. CODE. CRIM. PROC. art. 14.03 (phrasing authority to make a warrantless arrest in discretionary terms when an officer is authorized to make an arrest within and without the governmental employer's jurisdiction).

[27] *Cf. Travis v. City of Mesquite*, 830 S.W.2d 94, 103 (Tex. 1992) (Cornyn, J., concurring) ("In their routine work, police officers must be free to make split-second judgments in good faith based on their experience and training, without fear of personal liability. To hold otherwise 'would likely cause other peace officers under similar circumstances to flinch from acting because of fear of liability.'" (citation omitted)); *cf. also Kassen v. Hatley*, 887

Garza further explains that the dichotomy the appeals court created effects a schism in the immunity landscape by requiring a legal duty to invoke the scope-of-employment standard in the statute whereas the analogous element of the common-law official-immunity doctrine applies only to a governmental employee's good-faith performance of "discretionary duties . . . within the scope of their authority."[28]

To the extent a nondiscretionary obligation to act is required to invoke section 101.106(f), which is vigorously disputed, Garza and various amici cite articles 2.13, 6.06, and 14.03 of the Code of Criminal Procedure as conferring statewide jurisdiction—both the duty and the authority—to make a warrantless arrest in specified circumstances, including (1) when within view of an officer, a person "is about to commit an offense against the person or property of another" and (2) when a person "commits *any* offense within the officer's presence or view."[29] Garza urges that, by clear statutory directive, he was doing his job as a peace officer and acting in accordance with his Navasota Police Department peace officer's commission in attempting to arrest Santellana for drug possession and using force when Santellana resisted arrest.

In opposition, the plaintiffs embrace the duty limitation the court of appeals adopted, describing it as an important constraint on section 101.106(f)'s applicability when a police officer is off duty and outside his primary jurisdiction. And regardless of whether Garza had statutory

---

S.W.2d 4, 8 (Tex. 1994) ("The public would suffer if government officers, who must exercise judgment and discretion in their jobs, were subject to civil lawsuits that second-guessed their decisions.").

[28] *City of Lancaster v. Chambers*, 883 S.W.2d 650, 653 (Tex. 1994).

[29] TEX. CODE CRIM. PROC. arts. 2.13(b)(1) ("The officer shall: in every case authorized by the [Code of Criminal Procedure], interfere without a warrant to prevent or suppress crime."), 6.06 (peace officer's "duty to prevent" crimes to person or property within the officer's view), 14.03(g)(2) (emphasis added) (statewide jurisdiction to arrest for any crime the officer witnesses other than a traffic offense).

authority to act under the circumstances, the plaintiffs deny that he had any duty to so, asserting he incorrectly construes the Code of Criminal Procedure in that regard.

The plaintiffs contend Garza's conduct was outside the scope of his governmental employment as a matter of law—or a fact issue exists on that point—because (1) he was outside the Navasota Police Department's territorial jurisdiction, (2) he was off duty and acting as a courtesy patrol officer for the apartment complex, (3) he contractually agreed not to act as a peace officer while performing courtesy-patrol-officer services, and (4) the Navasota Police Department had no right to control Garza's actions outside its jurisdiction.

In an argument raised for the first time on appeal, the plaintiffs also assert quasi-estoppel and waiver principles preclude Garza from relying on section 101.106(f) based on his contractual agreement to refrain from acting as a police officer while working as a courtesy patrol officer. Garza counters that these theories are waived and, in the alternative, lack merit because any benefit to the apartment complex and any attempt to circumscribe his responsibilities by private-party contract are irrelevant to whether he was objectively doing his job as a peace officer.

## II. Discussion

A suit against a governmental employee in an official capacity is effectively a suit against the employing governmental unit, except in those cases alleging the employee has acted *ultra vires*.[30] Nonetheless, under the common law, "public employees (like agents generally) have always been individually liable for their own torts, even when committed in the course of

---

[30] *Franka v. Velasquez*, 332 S.W.3d 367, 382 (Tex. 2011).

employment," and to the extent the employee is not entitled to official immunity, the employee's liability could be established in a suit against the employee individually.[31]

Section 101.106 of the Tort Claims Act alters the common-law scheme by requiring plaintiffs to choose between suing the governmental unit under the Act and suing a responsible employee in an individual capacity.[32] Section 101.106 "force[s] a plaintiff to decide at the outset whether an employee acted independently and is thus solely liable, or acted within the general scope of his or her employment such that the governmental unit is vicariously liable."[33] And because an official-capacity suit against a public employee is merely another way of pleading an action against the governmental employer,[34] on the employee's motion, section 101.106(f) compels an election that makes suit against the governmental employer the exclusive remedy for a public employee's conduct within the scope of employment.[35] In doing so, "section 101.106's election scheme favors the expedient dismissal of governmental employees when suit should have been brought against the government."[36] Unlike official immunity, which is an affirmative defense that bars a governmental employee's individual liability,[37] section 101.106(f) essentially prevents

---

[31] *Id.* at 383 (footnotes omitted).

[32] *See* TEX. CIV. PRAC. & REM. CODE § 101.106(a)-(f); *Mission Consol. Indep. Sch. Dist. v. Garcia*, 253 S.W.3d 653, 656 (Tex. 2008) (observing that a prior version of the Tort Claims Act did not "prevent a plaintiff from pursuing alternative theories against both the employee and the governmental unit through trial or other final resolution").

[33] *Garcia*, 253 S.W.3d at 657.

[34] *Alexander v. Walker*, 435 S.W.3d 789, 791 (Tex. 2014).

[35] *Franka*, 332 S.W.3d at 381 (section 101.106(f) "foreclose[s] suit [under the Act] against a government employee in his individual capacity if he was acting within the scope of employment"); *see Tex. Adjutant Gen.'s Office v. Ngakoue*, 408 S.W.3d 350, 352 (Tex. 2013).

[36] *Ngakoue*, 408 S.W.3d at 355.

[37] *City of El Paso v. Heinrich*, 284 S.W.3d 366, 380 (Tex. 2009).

an employee from being sued at all for work-related torts and instead provides for a suit against the governmental employer.[38]

Garza's motion to dismiss does not assert official immunity under the common law,[39] but instead invokes the statutory right to dismissal under section 101.106(f), which mandates dismissal when a suit against a governmental employee (1) is "based on conduct within the general scope of [the] employee's employment" and (2) "could have been brought under [the Act] against the governmental unit."[40] The parties do not dispute that Garza was a Navasota Police Department employee at the time of the alleged tort and that suit "could have been brought" under the Act against the City of Navasota, and so we need not substantively address those matters.[41] The sole issue on appeal is whether, within the meaning of section 101.106(f), Garza acted "within the general scope of [his] employment" as a peace officer when, while off duty and outside the City's territorial jurisdiction, he confronted and attempted to arrest Santellana.[42] Whether dismissal is

---

[38] *Cf. Franka*, 332 S.W.3d at 379-80 (within the meaning of section 101.106(f), tort claims against the government are brought "under" the Tort Claims Act even when the Act does not waive immunity for those claims).

[39] *See City of Lancaster v. Chambers*, 883 S.W.2d 650, 653 (Tex. 1994) (common-law official immunity requires good-faith performance of discretionary duties within the scope of the employee's authority).

[40] TEX. CIV. PRAC. & REM. CODE § 101.106(f).

[41] *See* 531 S.W.3d 852, 857 (Tex. App.—Houston [14th Dist.] 2017) ("The only disputed issue on appeal is whether Garza acted within the scope of his employment when he fatally shot Santellana while attempting to arrest him."); *see also Franka v. Velasquez*, 332 S.W.3d 367, 379-80 (Tex. 2011) (noting that "suit is brought under the Act when it is filed, not when waiver of immunity by the Act is established" and rejecting reading section 101.106(f) as requiring the employee to establish a waiver of the government's immunity); *Mission Consol. Indep. Sch. Dist. v. Garcia*, 253 S.W.3d 653, 659 (Tex. 2008) (subsection (f) is satisfied even if the governmental unit's immunity is not waived under the Tort Claims Act).

[42] TEX. CIV. PRAC. & REM. CODE § 101.106(f).

required ultimately hinges on the proper construction and application of section 101.106(f), and we review those matters de novo.[43]

## A. General Scope of Employment

Using a general definition with a term of enlargement, the Tort Claims Act broadly defines "scope of employment" as (1) "the performance for a governmental unit of the duties of an employee's office or employment," which (2) "includes being in or about the performance of a task lawfully assigned to an employee by competent authority."[44] Conduct falls outside the scope of employment when it occurs "within an independent course of conduct not intended by the employee to serve *any* purposes of the employer."[45]

As explained in *Laverie v. Wetherbe*, which issued after the court of appeals decided this case, the critical inquiry is whether, when viewed objectively, "a connection [exists] between the employee's job duties and the alleged tortious conduct."[46] Simply stated, a governmental employee is discharging generally assigned job duties if the employee was doing his job at the time of the alleged tort.[47] For purposes of section 101.106(f), the employee's state of mind,

---

[43] *Marino v. Lenoir*, 526 S.W.3d 403, 405 & n.5 (Tex. 2017) (characterizing a motion to dismiss under section 101.106(f) as a claim of governmental immunity that is reviewed de novo); *Molinet v. Kimbrell*, 356 S.W.3d 407, 411 (Tex. 2011) (statutory-construction issues are reviewed de novo).

[44] TEX. CIV. PRAC. & REM. CODE § 101.001(5); *see* TEX. GOV'T CODE § 311.005(13) ("'Includes' and 'including' are terms of enlargement and not of limitation or exclusive enumeration, and use of the terms does not create a presumption that components not expressed are excluded.").

[45] *Alexander v. Walker*, 435 S.W.3d 789, 792 (Tex. 2014) (quoting RESTATEMENT (THIRD) OF AGENCY § 7.07(2) (2006)) (emphasis added).

[46] 517 S.W.3d 748, 753.

[47] *See id.* (citing *City of Lancaster v. Chambers*, 883 S.W.2d 650, 658 (Tex. 1994)).

14

motives, and competency are irrelevant so long as the conduct itself was pursuant to the employee's job responsibilities.[48]

We hold that in attempting to arrest a suspect for a crime committed in plain view, city police officers—whether off- or on-duty and whether operating within their primary or extraterritorial jurisdiction—are acting within the general duties of their office, as statutorily conferred by and through their employment with a governmental unit.[49] By engrafting a "duty to act" limitation, the court of appeals misconstrued a peace officer's job "duties" for purposes of section 101.106(f) and applied a standard that is incompatible with an objective scope-of-employment analysis.

### B. Powers of Police Officers

Police officers are governmental agents that derive all their powers under the law through their employing governmental entity.[50] The powers and duties of "peace officers," a term that

---

[48] *Id.*

[49] *See id.* at 754 (quoting RESTATEMENT (THIRD) OF AGENCY § 7.07(2)) (perceiving no inconsistency between Texas's scope-of-employment law and the Restatement's articulation, which describes scope of employment as "performing work assigned by the employer or engaging in a course of conduct subject to the employer's control.").

[50] *Blackwell v. Harris County*, 909 S.W.2d 135, 138 (Tex. App.—Houston [14th Dist.] 1995, writ denied); *see* TEX. CODE CRIM. PROC. art. 2.12 (designating "peace officers" as including "police officers of an incorporated city . . . who hold a permanent peace officer license issued under Chapter 1701, Occupations Code"); TEX. OCC. CODE §§ 1701.001 ("'Peace Officer' means a person elected, employed, or appointed as a peace officer under Article 2.12, Code of Criminal Procedure, or other law."), .301 (with exceptions "a person may not appoint or employ a person to serve as an officer . . . unless the person holds an appropriate license issued by the commission"), .303(a) ("A law enforcement agency or governmental entity that hires a person for whom a license is sought must file an application with the commission as provided by commission rule."), .307(b) ("The commission may issue a permanent license to a person who meets the requirements of this chapter and the rules prescribed by the commission to serve as an officer."), .3161 (a "retired peace officer" is "a person who served as a peace officer in this state who . . . is not currently serving as an elected, appointed, or employed peace officer under Article 2.12, Code of Criminal Procedure, or other law").

includes city police officers like Garza,[51] are generally described in article 2.13 of the Code of Criminal Procedure.[52]

Article 2.13(a) states, "It is the *duty* of every peace officer to preserve the peace *within the officer's jurisdiction*."[53] Article 2.13(b) states that "in every case *authorized* by the provisions of this Code," a peace officer "*shall* . . . interfere without warrant to prevent or suppress crime" and "*shall* . . . arrest offenders without warrant in *every* case where the officer is *authorized* by law."[54] The term "shall," as the Legislature has explained in the Code Construction Act, "imposes a duty."[55] And "every" means "without exception."[56]

Elsewhere in the Code, peace officers are specifically authorized or commanded to act as peace officers outside their primary jurisdiction in limited circumstances. As it pertains to this case, Garza cites articles 6.06 and 14.03(g)(2) of the Code as conferring authority and, via article 2.13's mandate, imposing a duty that he undertake an arrest under the circumstances presented. The court of appeals determined that article 14.03(g)(2) gives rise to authority, but not an obligation to act, and though noting article 6.06 imparts a duty to act, the court apparently found article 6.06 inapplicable to the facts of this case.[57] The court of appeals did not consider whether

---

[51] *See* TEX. CODE CRIM. PROC. art. 2.12(3) ("police officers of an incorporated city" are "peace officers").

[52] *Id.* art. 2.13 ("[d]uties and powers" of "peace officer[s]").

[53] *Id.* art. 2.13(a) (emphasis added).

[54] *Id.* art. 2.13(b)(1), (4) (emphasis added).

[55] TEX. GOV'T CODE § 311.016(2); *see also Perryman v. Spartan Tex. Six Capital Partners, Ltd.*, 546 S.W.3d 110, 131 (Tex. 2018) ("By its plain and common meaning, 'shall' denotes mandatory action.").

[56] NEW OXFORD AMERICAN DICTIONARY (3d ed. 2010).

[57] 531 S.W.3d at 858-61 ("Texas law recognizes certain circumstances under which an officer outside of his or her jurisdiction has a duty to act. *See, e.g.*, TEX. CODE CRIM. PROC. ANN. art. 6.06 (officers are duty-bound to prevent the commission of an offense against the person or property of another). We are not aware of any statutory

16

article 2.13(b) makes an officer's duty coextensive with an officer's authority under the Code, focusing its analysis only on the jurisdictional language in article 2.13(a).[58]

Article 6.06 states that, "[w]henever, in the presence of a peace officer, or within his view, one person is about to commit an offense against the person or property of another, . . . it is his duty to prevent it."[59] The statute places no territorial constraint on this command to prevent crime to person or property.[60] Article 14.03(g)(2) applies only to certain peace officers, including city police officers like Garza,[61] and explicitly authorizes a police officer who is "outside of the officer's jurisdiction" to "arrest without a warrant a person who commits any offense within the officer's presence or view."[62] An officer's extraterritorial jurisdiction to act pursuant to article 14.03(g)(2) is state wide, except for certain traffic offenses, for which the officer's extraterritorial arrest authority is limited to the "county or counties in which the municipality employing the peace

---

duty to act that would apply to the specific facts of this case, and Garza has not directed us to authority establishing such a duty.").

[58] *See id.* at 859.

[59] TEX. CODE CRIM. PROC. art 6.06.

[60] *See id.*

[61] *Id.* art. 14.03(g)(2) (limiting extended jurisdiction to "[a] peace officer listed in subdivision (3), article 2.12, who is licensed under Chapter 1701, Occupations Code").

[62] *Id.* The Court of Criminal Appeals has interpreted the "within the officer's presence or view" language to mean that an officer need not personally observe the offense so long as the officer has personal knowledge of facts providing the officer probable cause to believe an offense was occurring or had occurred. *Brother v. State*, 166 S.W.3d 255, 260 (Tex. Crim. App. 2005). Some courts of appeals have interpreted *Brother* to mean article 14.03(g) applies to a police officer's investigative detention premised on reasonable suspicion, which is a lower standard of proof than probable cause. *See, e.g.*, *State v. Purdy*, 244 S.W.3d 591, 594 (Tex. App.—Dallas 2008, pet. ref'd); *Mitchell v. State*, 187 S.W.3d 113, 116 (Tex. App.—Waco 2006, pet. ref'd); *cf. Gonzalez v. State*, 563 S.W.3d 316 (Tex. App.—Houston [1st Dist.] 2018, no pet.). An officer making an investigative detention under this lower standard must have specific, articulable facts that cause the officer to have a reasonable suspicion that crime is afoot. *Terry v. Ohio*, 392 U.S. 1, 21 (1968). More recently, the Court of Criminal Appeals assumed without deciding that an "arrest" under article 14.03(g) encompasses an investigative detention based on reasonable suspicion. *York v. State*, 342 S.W.3d 528, 534-35 (Tex. Crim. App. 2011).

officer is located."[63]  Through these provisions and others, the Code explicitly contemplates that peace officers will, in certain circumstances, stop crime *wherever* it occurs.  As defined in the Code, such action constitutes the lawful exercise of official power.[64]

Peace officers are also expected to stop crime *whenever* it occurs.  Peace officers "retain their status as peace officers twenty-four hours a day,"[65] which means that "a police officer's 'off-duty' status is not a limitation upon the discharge of police authority in the presence of criminal activity."[66]  "If an off-duty officer observes a crime, as a matter of law he becomes an on-duty officer."[67]  Peace officers are therefore relatively unique among governmental employees as they may be required to spring into action at a moment's notice, even while off duty.  Accordingly, whether an officer is on or off duty does not determine whether the officer's conduct falls within the scope of his employment.

But because a police officer is always a police officer, even during off-duty hours, the capacity in which an officer is acting may be amenable to uncertainty.  The confusion is compounded when, as in this case and many others, an officer has undertaken private employment during off-duty hours.  To determine what capacity a peace officer was acting in when conduct

---

[63] TEX. CODE CRIM. PROC. art. 14.03(g)(2).

[64] *See, e.g.*, *Brother*, 166 S.W.3d at 260 (DWI stop and arrest outside city officer's primary jurisdiction were lawful); *Green v. State*, 490 S.W.2d 826, 827 (Tex. Crim. App. 1973) ("A city police officer is a peace officer.  As a peace officer he is authorized to make arrests outside the city limits where he serves." (citation omitted)).

[65] *Blackwell v. Harris County.*, 909 S.W.2d 135, 139 (Tex. App.—Houston [14th Dist.] 1995, writ denied); *see Moore v. State*, 562 S.W.2d 484, 486 (Tex. Crim. App. 1978).

[66] *Wood v. State*, 486 S.W.2d 771, 774 (Tex. Crim. App. 1972); *see Moore*, 562 S.W.2d at 486; *Morris v. State*, 523 S.W.2d 417, 418 (Tex. Crim. App. 1975).

[67] *Cherqui v. Westheimer St. Festival Corp.*, 116 S.W.3d 337, 344 (Tex. App.—Houston [14th Dist.] 2003, no pet.).

providing the basis for a claim has occurred, *Blackwell v. Harris County* suggests some helpful guidelines.[68] An officer enforcing general laws in accordance with a statutory grant of authority is acting in the course and scope of employment as a peace officer.[69] But if an officer is protecting a private employer's property, ejecting trespassers, or enforcing rules and regulations promulgated by the private employer, a fact question may arise as to whether the officer's conduct is in a private or official capacity.[70] Although we cannot envision a scenario in which a peace officer acting beyond his or her official power to act could ever be doing so in an official capacity,[71] we need not consider the matter here because Garza was carrying out general duties of a peace officer pursuant to an express legislative grant of authority.

Under article 14.03(g)(2), once a police officer observes criminal activity, status as a peace officer is activated even if the officer is outside the commissioning employer's geographic jurisdiction.[72] Article 6.06 invokes official authority in a similar manner but in limited circumstances where person and property are imperiled.[73] At a minimum, once Garza saw Santellana in possession of marijuana he immediately became an on-duty peace officer enforcing general laws under article 14.03(g)(2), and notwithstanding the fact that he was outside of his

---

[68] 909 S.W.2d at 139.

[69] *Id.*

[70] *Id.*

[71] A peace officer's authorized jurisdiction—both primary and extraterritorial—are generally defined by statute, but may also be extended by interlocal agreement or other lawful authority. *See, e.g.*, TEX. LOCAL GOV'T CODE § 362.002 (authorizing municipalities, counties, and joint airports to provide interlocal law enforcement assistance for "a state of civil emergency" and make "mutual aid law enforcement task force" agreements that extend law enforcement authority for criminal investigations, law enforcement, and arrests to neighboring contiguous areas).

[72] *See* TEX. CODE CRIM. PROC. art. 14.03(g)(2).

[73] *See id.* art. 6.06.

19

primary jurisdiction, his employment with the Navasota Police Department conferred authority to make a warrantless arrest. In attempting to arrest Santellana—whether accomplished in an improper manner as alleged—Garza was enforcing public laws. This is true even if the arrest also benefitted the apartment complex.[74] Because an arrest was authorized only by virtue of Garza's capacity as a peace officer, he was acting in his official capacity as a matter of law.[75]

Whether Garza looked the part (since he was wearing casual clothes and shoes), properly identified himself as a police officer, had a reasonable suspicion that a crime was occurring before witnessing Santellana breaking the law, or placed himself in danger by the manner he chose to effect the arrest do not raise a fact issue on the narrow and objective inquiry here. Objectively, Garza was doing his job as a police officer in attempting to arrest Santellana for possession of marijuana.

In so holding, we reject the duty-versus-authority dichotomy the court of appeals employed. Accordingly, even if the mandatory language in article 2.13(b) of the Code of Criminal Procedure does not equate "[a]uthority" under article 14.03(g)(2) with "duty" in a strict legal sense—which we need not and do not decide—section 101.106(f) of the Civil Practice and Remedies Code cannot reasonably be construed as fencing out job responsibilities and tasks that

---

[74] *See Kraidieh v. Nudelman*, No. 01-15-01001-CV, 2016 WL 6277409, at *6 (Tex. App.—Houston [1st Dist.] Oct. 27, 2016, no pet.) (mem. op.) (for purposes of a section 101.106(f) dismissal motion, "co-existing motivations do not remove an employee's actions from the scope of his employment so long as the conduct serves a purpose of the [governmental] employer").

[75] Ordinary citizens are empowered to make a citizen's arrest in limited circumstances. *See* TEX. CODE CRIM. PROC. art. 14.01(a) ("A peace officer or any other person, may, without a warrant, arrest an offender when the offense is committed in his presence or within his view, if the offense is one classed as a felony or as an offense against the public peace."). Whether a private citizen could effect an arrest does not preclude an action from falling within the ambit of a peace officer's job responsibilities, but certainly, if an arrest could only be made with law enforcement authority, the officer is objectively engaged in an official capacity.

20

are within a valid grant of authority to a governmental employee because of the employee's official capacity. Barring contrary indicators in the Tort Claims Act—and we find none—we must presume the Legislature knew that "our longstanding approach to the scope-of-employment analysis" focuses on an objective assessment of whether the employee's acts are "of the same general nature as the conduct authorized or incidental to the conduct authorized to be within the scope of employment."[76] A narrow approach limiting the scope of employment for peace officers only to mandates from an employer or strict legal directives in the Code of Criminal Procedure would run counter to the broad construction of section 101.106(f) we have articulated in other cases.[77]

This is not to say, however, that mere objective indicia of official capacity—for example, wearing a uniform, flashing a badge, or using a police vehicle—establishes course and scope of employment as a matter of law.[78] For purposes of dismissal under section 101.106(f), a nexus must exist between the conduct giving rise to the alleged tort and the officer's job responsibilities.

### C. Defenses to Section 101.106(f)'s Application

The plaintiffs' final arguments—that the doctrines of quasi-estoppel and contractual waiver preclude section 101.106(f)'s application—are waived and, in the alternative, lack merit. These

---

[76] *Laverie v. Wetherbe*, 517 S.W.3d 748, 753 (Tex. 2017) (quoting *Goodyear Tire & Rubber Co. v. Mayes*, 236 S.W.3d 754, 757 (Tex. 2007), and citing *Dugger v. Arredondo*, 408 S.W.3d 825, 835 (Tex. 2013)).

[77] *See id.*

[78] *See City of Laredo v. Saenz*, No. 04-05-00188-CV, 2006 WL 286006, at *1 (Tex. App.—San Antonio Feb. 8, 2006, no pet.) (mem. op.) (police officer's injury in an automobile accident did not occur in the course and scope of employment merely because it occurred in a police-issued undercover vehicle a new acquaintance was driving after both had been out drinking with friends); *Banfield v. City of San Antonio*, 801 S.W.2d 134, 137 (Tex. App.—San Antonio 1990, no writ) (for workers' compensation purposes, officer shot with her service revolver while at home and off duty was not injured in the course of her employment).

arguments, which are based on Garza's purported agreement to adhere to the apartment complex's policies and procedures for courtesy patrol officers, were raised for the first time on appeal.[79] Moreover, both turn on the terms of a contract to which neither the plaintiffs nor Santellana were a party.[80] If we were to entertain these defenses, grave public-policy concerns would be implicated because, under the theory the plaintiffs have articulated, both defenses to section 101.106(f)'s enforcement rely on the premise that peace officers can contractually avoid their oaths of office.[81]

### III. Conclusion

The facts of this case are heart-wrenching, but the legal issue is discrete. Under section 101.106(f), we are not tasked with passing judgment on Garza's skill or the manner in which he attempted to enforce the law. Our analysis is strictly limited to whether he was doing the job of a peace officer to stop crime when and where it happens. As to that matter, we hold that a licensed peace officer employed by a city's police department and acting under the warrantless-arrest provision in article 14.03(g)(2) of the Code of Criminal Procedure is within the general scope of the officer's employment for purposes of section 101.106(f) of the Tort Claims Act. We further hold that Garza was sued in his official capacity and is therefore entitled to be dismissed from the lawsuit because the record conclusively establishes he was acting under a valid grant of authority

---

[79] *See Tex. Dep't of Protective & Regulatory Servs. v. Sherry*, 46 S.W.3d 857, 861 (Tex. 2001) (constitutional claim on appeal in paternity suit waived by failure to raise complaint at trial).

[80] *Cf. Tawes v. Barnes*, 340 S.W.3d 419, 425 (Tex. 2011) (stating that third-party-beneficiary status requires clear and unequivocal intent to directly benefit the third party); *Swilley v. McCain*, 374 S.W.2d 871, 875 (Tex. 1964) ("Ordinary equitable or quasi-estoppel may preclude a party from asserting a right inconsistent with his unsworn allegations or admissions in a former action, but such estoppel arises only in favor of the parties to the first suit and those in privity with them.").

[81] *See* TEX. CONST. art. XVI, § 1 (official oath); *In re Prudential Ins. Co. of Am.*, 148 S.W.3d 124, 129 (Tex. 2004) ("As a rule, parties have the right to contract as they see fit as long as their agreement does not violate the law or public policy.").

conferred by virtue of his status as a peace officer and activated by the commission of a crime in his presence. Accordingly, we reverse the court of appeals' judgment and render judgment dismissing Garza from the suit.

_____
Eva M. Guzman
Justice

**OPINION DELIVERED:** May 24, 2019