**DISSENT; and Opinion Filed August 22, 2019.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

No. 05-18-00205-CV

**CKJ TRUCKING, LP. AND STEPHEN JACK BOND, Appellants**
**V.**
**THE CITY OF HONEY GROVE, Appellee**

**On Appeal from the 397th Judicial District Court**
**Grayson County, Texas**
**Trial Court Cause No. CV-16-0633**

# DISSENTING OPINION FROM DENIAL OF
# EN BANC RECONSIDERATION

By Justice Schenck

Upon internal request, a majority of the Court voted to deny en banc reconsideration of this case. I agree that both relevant language of section 101.021 and canons controlling its interpretation foreclose a finding of waiver of immunity and, thus, jurisdiction here. I therefore join Justice Reichek's dissenting opinion in full. I write separately to address a related but perhaps more basic concern with the panel's opinion.

Jurisdiction over a governmental unit in the state's own courts is, for better or worse, a product of legislative munificence and discretion. The Texas Tort Claims Act ("TTCA") confers that jurisdiction in certain cases but does so in a fairly unique way: it makes the waiver of immunity to suit coterminous with the defendant's liability on the merits. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 101.021. As the Supreme Court observed in *Miranda v. Texas Dep't of Parks & Wildlife*,

"[t]he Tort Claims Act creates a unique statutory scheme in which the . . . immunities to suit and liability are co-extensive: 'Sovereign immunity to suit is waived and abolished to the extent of liability created by this chapter.'" 133 S.W.3d 217, 224 (Tex. 2004) (quoting TEX. CIV. PRAC. & REM. CODE ANN. § 101.025(a)). For claims involving use of motor-driven vehicles, that point is arguably made twice more in section 101.021's immunity to liability waiver. TEX. CIV. PRAC. & REM. CODE ANN. § 101.021. As the panel opinion notes, a municipal employer is potentially liable in paragraph (1) of section 101.021 for personal injury, property damage and death claims arising from the use of a motor-driven vehicle, but only when "he acts within the scope *of his employment*." *Id.* § 101.021(1) (emphasis added). Paragraph (2) of section 101.021, joined to its neighbor with a conjunctive "and," targets personal injury and death claims relating to "use" of "tangible . . . personal property,"[1] and allows the claim against the governmental defendant only if a private person would be liable. *Id.* § 101.021(2).

Ignoring any debate over the interplay of these substantive provisions, the sole question before the Court on this interlocutory appeal is the jurisdictional inquiry posed by section 101.025 as applied by *Miranda* and its progeny. Indeed, the merits of the arguments surrounding liability, and immunity to it, can only arise through that jurisdictional lens at this stage. *E.g., Texas Dep't of Transp. v. City of Sunset Valley*, 8 S.W.3d 727, 730 (Tex. App.—Austin 1999, no pet.); *see also City of Dallas v. East Village Assoc.*, 480 S.W.3d 37, 46 (Tex. App.—Dallas 2015, pet. denied) (differentiating TTCA appeals from others as inviting merits inquiry as essential to the jurisdictional question over which interlocutory appellate jurisdiction obtains).

Honey Grove's liability on the merits is the *sine qua non* of our appellate jurisdiction and the controlling question under the waiver to suit provision. While the panel opinion relies on *Garza v. Harrison*, it does not address this question. 574 S.W.3d 389 (Tex. Crim. App. 2019). To

---

[1] I take as a given that a motor vehicle is "tangible personal property" under any understanding of that term.

be sure, the defendant in *Garza* was dismissed under a broadly-worded statute that posed the question as whether he was acting in the "general duties of [his] office" as a licensed Texas peace officer. *Id.* at 401. As the Supreme Court explained in *Garza* and the panel addresses here *the State,* not the municipality, authorized Officers Garza and Williamson to inject themselves into the injury-causing events. *Id.* at 403–404. The conclusion that either or both were operating within the course and scope of their general duty as peace officers is neither surprising nor controlling of the question whether they were acting on behalf of their respective city employers. That question is grounded in ancient law—respondeat superior (let the master answer)—that makes A responsible for B's tort where B is acting as A's employee, but not, for example where A functions as an independent contractor, is engaged in a "frolic and detour" or otherwise off-duty and controlling his or her own decisions. *Ginter v. Domino's Pizza, Inc.*, 93 S.W.3d 300, 303 (Tex. App—Houston [14th Dist.] 2002, pet. denied) (accident caused by delivery driver after shift ended). The "supreme test" for determining whether vicarious liability applies is "whether the person being held responsible can be said to have had a right to control the activities of the wrongdoer." *St. Joseph Hosp. v. Wolff*, 94 S.W.3d 513, 541–42 (Tex. 2002).[2]

Here, of course, the City, acting as an employer has no ability to supersede or preempt the state law that confers extraneous authority on peace officers. *See e.g., Texas Ass'n of Bus. v. City of Austin*, 565 S.W.3d 425, 439 (Tex. App.—Austin 2018, pet. filed). A peace officer's decision to inject himself in what he perceives as an unfolding criminal event is his and his alone, as it must be. The city employing such a peace officer has the same right to prevent that engagement as a general employer would have to order its employees not to report for jury duty—that is to say none. TEX. CIV. PRAC. & REM. CODE ANN. § 122.001. Likewise a city or anyone hiring an attorney

---

[2] *See also Painter v. Ameritex Drilling*, 561 S.W.3d 125, 132 (Tex. 2018) ("The defining characteristic of that relationship is the principal's right to control the agent's actions undertaken to further the principal's objectives.").

is obliged to accept that lawyers might, not by their terms of their employment, but by generally applicable law, disclose certain matters that the employer might prefer to remain confidential. TEX. DISCIPLINARY RULES PROF'L CONDUCT R. 1.05(c)-(d); Sarbanes Oxley Act of 2002, 116 STAT, 745 Public Law 107–204. Employees act as jurors and lawyers act as whistle-blowers, because of their prevailing obligations under general law and, perhaps, despite, rather than because of their employer's wishes.

The question, then, for purposes of examining the immunity to suit that determines jurisdiction here, is whether, to the extent liability created by this chapter of the TTCA extends to the facts of this case. No language in the TTCA suggests an intention to expand governmental liability beyond what a private employer would incur—much less does so "clearly and unambiguously." *Tooke v. City of Mexia*, 197 S.W.3d 325 (Tex. 2006) (statutory authorization that governmental immunity could "be sued" insufficiently clear).

Liability does not come to cities or anyone else like an asteroid, falling unannounced and without advance opportunity to avoid it. Even in those rare settings where one is strictly liable, that liability arises only after a choice has been made, whether it is to market a product capable of causing an injury or to engage in some ultra-hazardous activity. And yet, here, Texas cities and their taxpayers are apparently powerless to avoid liability for events taking place outside their borders or against their will. Their only decision giving rise to liability is to have a police department and hire one or more peace officers to staff it without unlawfully restraining them.

Of course, there is no doubting that Officer Williamson may well have been negligent or that his negligence caused serious harm. But, the fact that a peace officer himself has caused an injury that the Legislature may have absolved him (or her) of liability for does not compel the

conclusion that someone else must be liable for it.[3]  All legal doctrines exist for a reason, and typically demand more than a breach of duty before legal liability is imposed as a consequence of loss, as Mr. Hadley[4] and Ms. Palsgraf[5] can attest.  Sovereign immunity, in particular, as a doctrine operates with a contrary presumption—absent clear and unmistakable language waiving the immunity to suit, and in this case to liability—the claim fails *despite* the fact of the injury or someone else's lack of accountability for it.  If language in a statute authorizing a governmental entity to "sue and *be sued"* is insufficiently clear to demonstrate intent to waive immunity to suit,[6] then surely language authorizing a peace officer to be dismissed from a suit because he is acting within the general grant of authority from the State, is likewise insufficient to demonstrate that the employing city should be liable when the officer is acting on his own behalf and without any direction from the employing city.

/David J. Schenck/
DAVID J. SCHENCK
JUSTICE

Bridges, Whitehill, J.J. join this dissenting opinion

180205DF.P05

---

[3] The questions of whether the State acts as an "employer" here or whether an officer would be entitled to assert common-law immunity should the State not be subject to suit under section 101.106(f) are not before us.

[4] *Hadley v. Baxendale*, 9 Exch. 341 (1854).  Hadley suffered undeniable losses as a result of delay in repairing and returning the shaft for his mill.

[5] *Palsgraf v. Long Island R.R. Co.*, 248 N.Y. 339, 162 N.E. 99 (1928).  Ms. Palsgraf was undeniably injured when an unsecured scale fell on her after an explosion on the train platform and had far less opportunity to avoid her injury than did the defendant.

[6] *Tooke*, 197 S.W.3d 325.