**Affirmed and Memorandum Opinion filed March 3, 2022.**



In The

# Fourteenth Court of Appeals

---

### NO. 14-20-00402-CV

---

## CARLOS RODRIGUEZ, Appellant

## V.

## S.A. DUVALL, Appellee

---

**On Appeal from the 151st District Court**
**Harris County, Texas**
**Trial Court Cause No. 2017-04585**

---

### MEMORANDUM OPINION

In this interlocutory appeal, Carlos Rodriguez challenges the trial court's dismissal under the Texas Torts Claims Act (the Act) of his claims for assault, false arrest, and invasion of privacy against Officer S.A. Duvall, a police officer for the City of Houston Police Department (HPD).[1] The Act includes an election of

---

[1] Rodriguez initially filed suit in state court, bringing federal constitutional claims and state claims, so the case was removed to federal court. The case was remanded back to state court after Rodriguez dropped his federal constitutional claims.

remedies provision requiring trial courts to grant a motion to dismiss a lawsuit against a governmental employee sued in an official capacity.[2] Concluding that Duval was acting in his official capacity as a police officer when he arrested Rodriguez, we affirm.

## *Background*

Rodriguez was invited to a New Year's Eve party at Hotel ZaZa in Houston, Texas. According to Rodriguez, he was sitting at a table in a guest suite when Duvall, who was providing security for the hotel, and two other hotel security guards entered the room. Duvall injured Rodriguez in the process of detaining and arresting him.

Duvall moved to dismiss Rodriguez's claims against him on the grounds that even though Duvall was working as a security guard, he was discharging his duties as a police officer when he arrested Rodriguez. Duvall submitted excerpts of his deposition testimony in support of the motion to dismiss. Duvall stated that at the time of the incident he was doing security work for the hotel as "extra employment" approved by HPD. Duvall was working in the hotel bar at

---

[2] Tex. Civ. Prac. & Rem. Code § 101.106(f). We have jurisdiction to hear interlocutory appeals only as authorized by statute. *Lazarides v. Farris*, 367 S.W.3d 788, 796 (Tex. App.—Houston [14th Dist.] 2012, no pet.). The Civil Practice and Remedies Code authorizes appeals from certain interlocutory orders. Tex. Civ. Prac. & Rem. Code § 51.014(a). For example, a government employee can appeal the denial of a motion to dismiss based on immunity. *Id*. § 51.014(a)(5); *Franka v. Velasquez*, 332 S.W.3d 367, 371 n.9 (Tex. 2011) (explaining that a defendant seeking dismissal under section 101.106(f) is asserting a claim of governmental immunity). The statute, however, does not provide an explicit grant of authority to appeal an interlocutory order granting a motion to dismiss a governmental employee based on an assertion of immunity. On the other hand, the statute allows the appeal of an interlocutory order granting a motion to dismiss a governmental employee sued in an official capacity. *See Lazarides*, 367 S.W.3d at 797 (citing Tex. Civ. Prac. & Rem. Code § 51.014(a)(8) (authorizing interlocutory appeals from orders granting or denying pleas to the jurisdiction filed by governmental units)). For reasons discussed below, we conclude that Duvall was sued in his official capacity. Therefore, we have jurisdiction over this interlocutory appeal. *See id*.; *see also Franka*, 332 S.W.3d at 371 n.9.

approximately 10:45 p.m. when he was contacted by hotel security guard Lee Mays who told him that there was a loud noise complaint coming from a suite in the hotel. Mays asked for assistance in approaching the occupants of the suite. The suite tenant answered the door and after speaking with Mays and Duvall, agreed to turn down the music in the suite and reduce any other loud noises. Mays and Duvall then left, and Duvall went back to the bar.

Duvall recounted that at approximately 11:30 p.m., hotel security guard Terrence Phelps and another hotel security guard approached Duvall about a narcotics complaint regarding marijuana use in the same suite.[3] According to Duvall, when they approached the suite, "there was actually now a very strong odor of marijuana coming from the room." The suite tenant answered the door, quickly stepped out of the suite, and shut the door. Duvall said that the tenant asked if he could get in trouble for "what's going on in there," denied any knowledge of what was happening, and consented to let them enter the suite. Then another person opened the door, and Duvall entered the suite, followed by the other security guards.

According to Duvall, he "perceived [Rodriguez] to be doing something illegal" in a back room of the suite. Duvall said he saw a green leafy substance on a table that Rodriguez was "putting . . . on the ground, stomping on[,] or throwing . . . into empty red Solo . . . cups on the table." Duvall "from [his] training and experience" identified the green leafy substance as marijuana "due to the smell, the complaint allegations, [and] past experiences." Duvall ordered Rodriguez to stop, but Rodriguez "continued moving." Duvall told Rodriguez he was a police officer and grabbed Rodriguez's hand. Duvall told Rodriguez to put his hands behind his back, but Rodriguez resisted and picked up a metal plate

---

[3] Terrence Phelps is referred to as Terrence Phillips at various points in the record.

cover on the table. Duvall grabbed Rodriguez and did a leg sweep. Rodriguez fell on his face, at which point Duvall placed Rodriguez in handcuffs.

Rodriguez responded to Duvall's motion to dismiss with excerpts from Phelps' deposition. Phelps stated that when they approached the suite, someone was walking down the hall towards the elevator. That person asked the security guards, "If there's anything illegal going on in the room can I be held accountable for it just because my name is on the room? Because I'm not in the room." The security guards then proceeded to the suite, where the door was open. Phelps knocked and announced "Security" before they entered the suite.

Rodriguez also provided a declaration from Richard Echevarry, the person who rented the suite. Echevarry stated that he did not give security guards permission to enter the suite and was not present when the security guards did so.

In his reply to Rodriguez's response, Duvall included additional deposition excerpts from Phelps. Phelps stated that although Echevarry had consented for them to enter the suite, when they got there, "the door was already open. So I knocked, identified myself as security. I knocked again. I knocked several times. No one ever came to the door. At that point, Officer Duvall and [I] stepped inside the door."[4] Then Duvall announced, "H.P.D. Put your hands up." According to Phelps, Duvall approached a table that was covered with "a lot of drug paraphernalia . . . [l]ike little bags of . . . weed and . . . some . . . powdery-looking substance." Phelps thought the man at the table had a weapon because he had his hands under the table and refused to put his hands up when Duvall ordered him to do so. Duvall then grabbed the man, and the man fought back. The man then fell, and "when Duvall raised him up, his mouth [was] all bloody." Phelps also stated

---

[4] Phelps later testified that he did not remember whether "any door was open or closed when [they] were in there."

4

that he did not smell anything and did not know what marijuana is "supposed to smell like."[5]

### *Discussion*

In two issues, Rodriguez contends that the trial court erred in dismissing his claims against Duvall because (1) Duvall did not have consent to enter the suite or probable cause to believe that evidence of a crime would be found in the suite and insufficient exigent circumstances existed to justify an immediate search without a warrant; and (2) a fact question exists as to whether Duvall was acting in his private or official capacity when he arrested Rodriguez.

Under section 101.106(f) of the Act, the legislature mandated that a governmental unit—not the government employee—must be sued for a governmental employee's work-related tortious conduct. *Garza v. Harrison*, 574 S.W.3d 389, 394 (Tex. 2019). It provides:

> If a suit is filed against an employee of a governmental unit based on conduct within the general scope of that employee's employment and if it could have been brought under this chapter against the governmental unit, the suit is considered to be against the employee in the employee's official capacity only. On the employee's motion, the suit against the employee shall be dismissed unless the plaintiff files amended pleadings dismissing the employee and naming the governmental unit as defendant on or before the 30th day after the date the motion is filed.

Tex. Civ. Prac. & Rem. Code § 101.106(f).

Section 101.106(f) essentially prevents an employee from being sued at all

---

[5] We note that on appeal, Rodriguez attached entire transcripts of his, Duvall's, Mays', and Phelps' depositions, which were not attached in their entirety to the relevant motions, responses, and replies filed below. On appeal, Rodriguez also cites the deposition transcripts attached to his appellate brief instead of citing the record. For purposes of this appeal, we consider only the excerpts of deposition transcripts that were filed in the trial court in support of the motion to dismiss and responsive briefing.

for work related torts and instead provides for a suit against the governmental employer. *Garza*, 574 S.W.3d at 400. It mandates dismissal when a suit against a governmental employee is (1) "based on conduct within the general scope of [the] employee's employment" and (2) "could have been brought under [the Act] against the governmental unit." *Id.*

Rodriguez did not amend his pleading to dismiss Duvall and name the City of Houston as a defendant under section 101.106(f). Instead, Rodriguez argued the statute is inapplicable because Duvall was acting within the scope of his employment with the hotel, not as a police officer for HPD. The parties do not dispute that Duvall was an HPD employee at the time of the alleged tort. *See id.* The issue on appeal is whether, within the meaning of section 101.106(f), Duvall acted "within the general scope of [his] employment" as a police officer when, while off duty, he arrested Rodriguez. *See id.* According to Rodriguez, Duvall did not act within the general scope of his employment because he did not have authority to search the hotel room without a warrant. Alternatively, Rodriguez argues that there is a fact question as to whether Duvall was acting within the scope of his employment at the time of the arrest. We review these matters de novo. *See id.*

## I. Warrantless Detainment and Arrest in Course and Scope of Duties as Police Officer

In his first issue, Rodriguez contends that Duvall did not have the authority to detain and arrest Rodriguez without consent or probable cause to enter the suite or exigent circumstances to justify an arrest. According to Rodriguez, Duvall was "acting in his personal capacity, and not 'under the color of the law'" when he arrested Rodriguez. Duvall counters that the arguments about consent to enter the room, probable cause, and exigent circumstances are immaterial because the

detention and arrest were within the course and scope of his duties as a police officer once he observed Rodriguez purportedly engaging in unlawful activity.

The Supreme Court of Texas has held that officers "retain their status as peace officers twenty-four hours a day, which means that a police officer's 'off-duty' status is not a limitation upon the discharge of police authority in the presence of criminal activity." *Id*. at 403. "If an off-duty officer observes a crime, as a matter of law he becomes an on-duty officer." *Id*. When a police officer has undertaken private employment during off-duty hours, to determine the capacity in which the officer was acting, courts must ask whether the officer is enforcing general laws in accordance with a statutory grant of authority. *Id*. If so, the officer is acting in the course and scope of employment as a police officer. *Id*.

We turn to the facts of the *Garza* case. While working as a courtesy patrol officer for an apartment complex, an off-duty police officer observed two people sitting in a car in the apartment complex parking lot. *Id*. at 394-95. The officer stated that he saw the person in the driver's seat putting marijuana into a pill bottle. *Id*. at 395. According to the officer, he displayed his police badge and identification card, identified himself as a police officer, and asked the person to step out of the car. *Id*. The person did not comply and instead started his car and began backing up. *Id*. The officer drew his weapon and fired two shots through the side window and discharged additional rounds "in an attempt to stop" the driver. *Id*. The driver later died from two gunshot wounds. *Id*. at 395-96. In concluding that the officer, Garza, became an on-duty police officer once he observed someone in possession of marijuana, the high court noted, "[w]hether [the officer] had a reasonable suspicion that a crime was occurring before observing [a crime] or . . . chose to effect the arrest [in an improper manner did] not raise a fact issue on the narrow and objective inquiry." *Id*. at 404. The inquiry was "[o]bjectively,

7

[whether the officer] was doing his job as a police officer in attempting to [effect an] arrest . . . for possession of marijuana." *Id*.

Duvall similarly stated that he saw Rodriguez handling a "green leafy substance" that he was "putting . . . on the ground, stomping on[,] or throwing . . . into empty red Solo . . . cups on the table." According to Duvall, "due to the smell, the complaint allegations, [and] past experiences . . . he could confirm . . . from [his] training and experience, that it was marijuana." Phelps likewise stated that Duvall approached a table covered with "a lot of drug paraphernalia . . . [l]ike little bags of . . . weed and . . . some kind of powdery-looking substance." Phelps thought the man had a weapon because he had his hands under the table and refused to put them up when Duvall ordered him to do so.

We are bound by *Garza*. Under the supreme court's reasoning, it did not matter whether the officer had reasonable suspicion that a crime was occurring before he witnessed the suspect breaking the law. *Id*. The relevant point in time was the moment the officer observed illegal activity. *Id*. Similarly, it did not matter whether the arrest was "accomplished in an improper manner." *Id*. As the court noted,

> [t]he scope-of-employment inquiry under section 101.106(f) focuses on whether the employee was doing his job, not the quality of the job performance. Even if work is performed wrongly or negligently, the inquiry is satisfied if, when viewed objectively, 'a connection [exists] between the employee's job duties and the alleged tortious conduct.'

*Id*. at 394. In that case, a connection existed "between the defendant law enforcement officer's job responsibilities and the alleged tort because he was exercising a statutory grant of authority to make a warrantless arrest for a crime committed in his presence—authority he possessed solely through his governmental employment." *Id*.

Following this logic, Duvall immediately became an on-duty police officer when he purportedly saw Rodriguez attempting to conceal or destroy marijuana. *See id.* at 404. In arresting Rodriguez—whether done so in an improper manner— Duvall was enforcing public laws. *See id.*; *see also* Tex. Code Crim. Pro. art. 14.01(b) ("A peace officer may arrest an offender without a warrant for any offense committed in his presence or within his view."). That is true even if the arrest benefitted the hotel and even if Duvall lacked consent or probable cause before purportedly witnessing illegal activity. *See Garza*, 574 S.W.3d at 404. Once Duvall purportedly observed Rodriguez in possession of marijuana, an arrest was authorized only by virtue of Duvall's status as a police officer. *See id.* Duvall's state of mind, motives, and competency were irrelevant so long as the conduct was pursuant to his duties as a police officer. *See id.* at 401. Accordingly, Duvall was acting in his official capacity as a matter of law when he arrested Rodriguez. *See id.* at 404. We overrule Rodriguez's first issue.

## II.    No Fact Issue Regarding Private or Official Capacity

Rodriguez also argues in his second issue that there is a fact issue regarding whether Duvall was acting in a private or official capacity when he detained and arrested Rodriguez. We disagree.

Under *Garza*, if an officer is protecting a private employer's property, ejecting trespassers, or enforcing rules and regulations promulgated by the private employer, a fact question may arise as to whether the officer's conduct was in a private or official capacity. *Id.* at 403. However, when an officer makes an arrest for illegal activity, he is acting in his official capacity, even if that arrest also benefits the private employer. *See id.* at 404. Again, as the supreme court held:

> Whether [the officer] looked the part (since he was wearing casual clothes and shoes), properly identified himself as a police officer, had

9

a reasonable suspicion that a crime was occurring before witnessing [the person] breaking the law, or placed himself in danger by the manner he chose to effect the arrest do not raise a fact issue on the narrow and objective inquiry here. Objectively, [the officer] was doing his job as a police officer in attempting to [make an] arrest . . . for possession of marijuana.

*Id.*

Duvall was doing his job as a police officer when he arrested Rodriguez for possession of marijuana. *See id.* It does not matter if the detainment and arrest also benefitted the hotel. *See id.* It does not matter if Duvall arrested Rodriguez in an improper manner. *See id.* The undisputed facts of this case do not raise a fact issue on whether Duvall was acting in a private or official capacity when he arrested Rodriguez. We overrule Rodriguez's second issue.

### *Conclusion*

As noted in *Garza*, the facts of the case may be distressing, but the legal issue is discrete. *Id.* at 405. Under section 101.106(f), we do not pass judgment on the officer's skill or the way he attempted to enforce the law. *See id.* Our analysis is limited only to whether the officer was doing the job of a police officer to stop crime when and where it happens. *See id.* at 405-06. Duvall was sued in his official capacity, and he was entitled to be dismissed from the lawsuit because the record conclusively establishes that he was acting under a valid grant of authority conferred by virtue of his status as a police officer and activated by the commission of a crime in his presence. *See id.* at 406; *see also* Tex. Code Crim. Pro. art. 14.01(b). Accordingly, we affirm the trial court's order dismissing Duvall from the suit.

/s/    Frances Bourliot
Justice


Panel consists of Justices Wise, Bourliot, and Zimmerer.