In The

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

NO. 09-19-00061-CV
_____

LAYNE WALKER, Appellant

V.

STEPHEN HARTMAN, Appellee

On Appeal from the 58th District Court
Jefferson County, Texas
Trial Cause No. A-198,246

**MEMORANDUM OPINION**

In an accelerated appeal, Layne Walker challenges the trial court's denial of his plea to the jurisdiction. This appeal arises from a lawsuit filed by Stephen Hartman against Walker and others for claims stemming from Hartman's 2013 arrest in Walker's courtroom. In one issue on appeal, Walker asserts that the trial court erred when it denied his plea to the jurisdiction because he is entitled to sovereign immunity, and Hartman's claims for malicious prosecution and civil conspiracy are

1

barred by the Texas Tort Claims Act (TTCA) election of remedies. [1,2] *See* Tex. Civ. Prac. & Rem. Code Ann. § 101.106(a)–(f). For the reasons explained below, we affirm.

## I. Factual Background

In this case's first journey to the Court of Appeals, the factual details were explained extensively in our prior opinion. *See Walker v. Hartman*, 516 S.W.3d 71, 75–77 (Tex. App.—Beaumont 2017, pet. denied) (*Walker I*). As such, we adopt the background facts as stated in *Walker I. See id.* On May 28, 2013, Hartman, a licensed investigator and licensed process server employed by Klein Investigations and Consulting, entered the 252nd District Courtroom while Walker, the former judge of said court, was presiding. Hartman pleaded that he approached the bar in the courtroom, but did not cross it, and after motioning for the bailiff, Deputy Lewis, to come toward him, he whispered to Lewis that he needed to serve Walker with a summons. According to Hartman, Lewis walked to Deputy Broussard, and Broussard "rushed toward Hartman and immediately began pushing Hartman to the

---

[1] Walker initially challenged the trial court's denial of his motion for summary judgment based on res judicata and collateral estoppel but has since withdrawn that issue.

[2] While Walker presents the argument that section 101.106(a) and (f) of the TTCA bars the claims against him in conjunction with his sovereign immunity issue, we address that claim as a separate issue.

exit door, stating Hartman needed to 'leave or go under arrest.'" According to Hartman's petition, he did not attempt to serve Walker in court.

Hartman pleaded that although he identified himself as a licensed process server and did nothing disruptive, Deputies Lewis and Broussard, as well as Deputy Barker, placed Hartman under arrest and confiscated his personal property, which included, among other things, his iPhone and a video recording pen that had captured the events. Hartman also pleaded that the officers used excessive force during his arrest and detained him for an excessively long period. Hartman alleged that Walker knew in advance Hartman intended to serve him and that Walker had instructed Deputies Lewis, Broussard, and Barker to arrest Hartman when Hartman stated his intention to serve the summons.

According to Hartman's petition, the three deputies subsequently allowed him to serve the summons on Walker in the jury room. Hartman pleaded that he was told he would be charged with interfering with public duties and disrupting a public meeting, and he alleged that Deputies Broussard, Barker, and Lewis falsified probable cause affidavits to support those charges. In addition, Hartman alleged that Walker and other defendants, working together, replaced Hartman's recording pen with a pocket screwdriver "as part of their scheme to hide Hartman's recording pen and its evidence[.]" Hartman also alleged that Walker's court coordinator

3

"maliciously sought to revoke Hartman's professional licenses[]" by filing formal complaints with the Texas Department of Public Safety Private Security Bureau, the Texas Process Server Review Board, and the Texas Association of Licensed Investigators (a trade association). As a result of the complaints being filed, Hartman's licenses as a private investigator, personal protection officer, and commissioned security guard were suspended for approximately three months until his criminal case was dismissed.

Hartman also pleaded that "Walker, with the participation by overt acts of all other Defendants, prosecuted a malicious, illegal criminal case against Hartman[.]" Hartman alleged that Walker and other defendants illegally purported to, or pretended to, "hire[] Joe Alford to serve as a District Attorney Pro Tem (DAPT), and arranged for illegal payment of Joe Alford out of the Texas Indigent Defense Fund (IDF)."

According to Hartman, Walker instructed Broussard to take Hartman's recording pen home, where Broussard downloaded it onto a CD and attempted to delete the pen's contents. According to Hartman, Walker and other defendants instructed the persons present in the courtroom during the incident "to provide perjured affidavits and one false witness statement[] to support Hartman's arrest and prosecution[]" and instructed sheriff's deputies to prepare falsified arrest reports and

4

probable cause affidavits. Hartman's petition alleged that the recording pen contained evidence proving that the probable cause arrest affidavits and reports, as well as the affidavits of witnesses, were "perjured and materially false[.]" Hartman further alleged that the defendants who participated in a "pattern of denials and obfuscations about the existence of the recording pen and its evidence" acted on the personal orders of Walker and other defendants.

## II. Procedural History

Hartman filed a federal lawsuit against Walker individually, The State of Texas, Jefferson County, the courtroom bailiffs, sheriff's department employees, and individuals who witnessed Hartman's arrest and signed affidavits about his arrest, seeking damages and remedies for violations of 42 U.S.C. § 1983, and against Walker and his court coordinator for tortious interference with business relationships, defamation, invasion of privacy and intentional infliction of emotional distress. In his second amended federal complaint, Hartman effectively nonsuited the State of Texas by eliminating any allegations against the State while alleging additional state tort claims against Jefferson County, Walker, and other named defendants in their individual capacity.[3] Walker's federal lawsuit was ultimately

---

[3] There is no record showing the State of Texas ever answered or made an appearance in the federal lawsuit before it was nonsuited.

dismissed. Hartman then filed this suit in state court alleging Texas tort claims against Walker, the bailiffs, sheriff's department employees, Walker's courtroom staff, and the individuals who signed the affidavits.

In his first response to Hartman's pleadings, Walker requested the trial court dismiss Hartman's claims under the Texas Citizens Participation Act (TCPA). *See generally* Tex. Civ. Prac. & Rem. Code Ann. §§ 27.001–.011. Subsequently, Walker amended his response and filed a Rule 91a motion to dismiss based on collateral estoppel, res judicata and judicial immunity, quasi-judicial immunity, and sovereign immunity. *See* Tex. R. Civ. P. 91a. After a hearing on Walker's Rule 91a motion, the trial court granted Walker's request in part and denied it in part. Specifically, the trial court held that "the motion is granted with respect to conduct of Walker in the courtroom (the arrest) but DENIED with respect to the conduct that occurred subsequently." Walker appealed to this Court, and we affirmed the trial court's ruling. *See Walker I*, 516 S.W.3d at 84.

In 2018, Walker filed another motion to dismiss for lack of subject matter jurisdiction based on the defense of sovereign immunity. In his motion, Walker argued that "[a] government employee has sovereign or governmental immunity when he acts as a representative of the government." Walker argued that the TTCA election of remedies sections 101.106(a) and (f) required the dismissal of the claims

6

against him. Walker contended that the TTCA election of remedies provision of section 101.106(a) barred Hartman's claims because Hartman elected to sue the State of Texas and Jefferson County in federal court, barring any litigation against Walker individually. In addition, Walker argued that Hartman's claims should be barred because the acts of Walker made the basis of Hartman's claims were performed in his official capacity and in the course and scope of his employment as provided under section 101.106(f). After a hearing, the trial court denied Walker's motion to dismiss for lack of subject matter jurisdiction based on sovereign immunity. Walker timely appealed.

### III.    Standard of Review

Section 51.014 of the Texas Civil Practice and Remedies Code gives us jurisdiction over this interlocutory appeal of the trial court's denial of a plea to the jurisdiction. *See* Tex. Civ. Prac & Rem. Code Ann. § 51.014(a)(5), (8); *see also Lenoir v. Marino*, 469 S.W.3d 669, 673 n.2 (Tex. App.—Houston [1st Dist.] 2015) (op. on reh'g), *aff'd*, 526 S.W.3d 403 (Tex. 2017). "A plea questioning the trial court's jurisdiction raises a question of law that we review *de novo*." *State v. Holland*, 221 S.W.3d 639, 642 (Tex. 2007) (citing *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004)); *see also Menefee v. Medlen,* 319 S.W.3d 868, 871 n.1 (Tex. App.—Fort Worth 2010, no pet.) (citing Tex. Civ. Prac.

7

& Rem. Code Ann. §§ 51.014, 101.106)) (recognizing an appellate court's jurisdiction pursuant to section 51.014(a)(5) of the Civil Practice and Remedies Code over trial court rulings on governmental immunity under section 101.106 of the TTCA), *disapproved of on other grounds*, *Franka v. Velasquez*, 332 S.W.3d 367, 382 n.67 (Tex. 2011).

## IV. Sovereign Immunity

**A. Analysis**

In his first issue, Walker argues that the trial court erred when it denied his motion to dismiss based on sovereign immunity because "Hartman's own judicial admissions establish Walker's sovereign immunity from suit as an employee of the [S]tate of Texas or one of its political subdivisions" and "[t]he trial court should have . . . dismissed Hartman's claims for want of jurisdiction[.]"

"In Texas, sovereign immunity deprives a trial court of subject matter jurisdiction for lawsuits in which the state or certain governmental units have been sued unless the state consents to suit." *Miranda*, 133 S.W.3d at 224 (citations omitted). Sovereign immunity involves both immunity from suit and from liability. *Reata Constr. Corp. v. City of Dall.*, 197 S.W.3d 371, 374 (Tex. 2006). "Immunity from liability is an affirmative defense that bars enforcement of a judgment against a governmental entity, while immunity from suit bars suit against the entity

8

altogether and may be raised in a plea to the jurisdiction." *Brown & Gay Eng'g, Inc. v. Olivares*, 461 S.W.3d 117, 121 (Tex. 2015) (citations omitted).

Although Walker asserts in his brief that he is entitled to sovereign immunity, that term is often used interchangeably with governmental immunity when, in reality, they are two distinct concepts. In the context Walker raised the defense in his answer, we will review Walker's claim of sovereign immunity as a claim for governmental immunity. *See Wichita Falls State Hosp. v. Taylor*, 106 S.W.3d 692, 694 n.3 (Tex. 2003) (citations omitted)

An individual employee may be entitled to governmental immunity if he is sued in his official capacity. *Nueces Cty. v. Ferguson*, 97 S.W.3d 205, 214 (Tex. App.—Corpus Christi 2002, no pet.). "Persons sued in their official capacity may raise any defense available to the governmental unit, including sovereign immunity" although this immunity does not apply to a person sued in their individual capacity and "[p]ersons sued in their individual capacities, . . . may not rely on sovereign immunity protections for claims against them in that capacity, although they may assert the defense of official immunity." *Id.* at 215 (citations omitted). "[P]ersons sued in both official and individual capacities may assert both official and sovereign immunity, although they enjoy sovereign immunity protection only to the extent that they were acting in their official capacity." *Id.*

9

### 1. Official Capacity or Individual Capacity

We begin our analysis with a determination of whether Walker was sued in his official capacity or individual capacity to determine if he is entitled to claim governmental immunity. Regardless of what the movant states, to make this determination, we review the plaintiff's pleading and perform a "course of proceedings" review and "ascertain the true nature of the plaintiff's claims[.]" *Ross v. Linebarger, Goggan, Blair & Sampson, L.L.P.*, 333 S.W.3d 736, 743 (Tex. App.—Houston [1st Dist.] 2010, no pet.). In the trial court, Hartman asserted two claims against Walker, one alleging malicious prosecution and the other based on an alleged civil conspiracy. In his 5th amended petition, Hartman pleaded that after he was arrested in Walker's courtroom, Walker, along with several other defendants, orchestrated a conspiracy to have him illegally prosecuted for his actions. He argues Walker's actions were not within his official capacity as judge. Walker, on the other hand, asserts he acted within his official capacity, stating that "[a] judge[] presiding over his courtroom, suppressing disruption of proceedings, and even securing a criminal prosecution against the person who disrupted proceedings is part of a judge's job." As we determined in *Walker I,* Hartman's claims for malicious prosecution and civil conspiracy, as pleaded, were based on acts that occurred after

10

Hartman was removed from Walker's courtroom. *See* 516 S.W.3d at 83–84. Generally, Hartman's allegations focus on Walker's actions after he left the bench, and given the facts he pleaded, the pleadings alleged acts that fall outside the general scope of duties of a district judge. *Id.* And Hartman pleaded facts alleging Walker committed acts that were outside the duties Walker had as a district judge in his official capacity. *Id.* Therefore, we conclude Hartman did not sue Walker in his official capacity; consequently, governmental immunity does not protect Walker from suit assuming the facts Hartman alleged are true.

### 2. Official Immunity

A person sued in an individual capacity may still be entitled to official immunity, even though governmental immunity does not apply. *Franka*, 332 S.W.3d at 382–83. If a person is sued in their individual capacity, they may be held personally liable for their own torts to the extent the employee is not entitled to official immunity. *Tex. Adjutant General's Office v. Ngakoue*, 408 S.W.3d 350, 357 (Tex. 2013). "Official immunity . . . is an affirmative defense protecting public officials from individual liability." *City of El Paso v. Heinrich*, 284 S.W.3d 366, 380 (Tex. 2009). "[U]nlike sovereign immunity from suit, which . . . may be raised in a plea to the jurisdiction, official immunity is an affirmative defense that must be pled

11

and proved by the party asserting it." *Brown*, 461 S.W.3d at 128 (citing *City of Lancaster v. Chambers*, 883 S.W.2d 650, 653 (Tex. 1994)).

Our review of Walker's live pleading does not show he asserted the defense of official immunity in the court below. Instead, Walker alleged he has the same immunity as that enjoyed by the government. That allegation did not raise an affirmative defense based on a claim of official immunity. *See id.* at 128–29 (stating that because the appellant never asserted official immunity but asserted "the same immunity [as] the government" the elements of that defense are not "satisfied[,]" and they are not entitled to that defense.). Because Walker did not plead a claim alleging official immunity, we do not reach his official immunity arguments in our review. *See Meyers v. JDC/Firethorne, Ltd.*, 548 S.W.3d 477, 482 n.5 (Tex. 2018) (explaining that because the appellant did not file a motion for summary judgment based on official immunity in his individual capacity, any claims against him in his individual capacity "remain[] pending before the trial court."). We overrule Walker's first issue.

## V. TTCA – Election of Remedies

### A. Analysis

In his second issue, Walker argues that the trial court erred when it denied his plea to the jurisdiction and that he is entitled to a ruling dismissing Hartman's suit

12

based on the TTCA election of remedies provision in section 101.106. *See* Tex. Civ. Prac. & Rem. Code Ann. § 101.106(a)–(f). Walker contends that when Hartman filed his federal lawsuit suing Jefferson County and the State of Texas, the election he made suing them was irrevocable. Walker concludes that under the TTCA, Hartman is barred from litigating claims arising from the same subject matter of the suit he filed against those entities in federal court against him individually.

The TTCA contains an election of remedies provision forcing plaintiffs at the outset of their suits, to determine whether to sue governmental employees in their individual capacity or to sue the governmental entity. *See id.*; *see also Mission Consol. Indep. Sch. Dist. v. Garcia*, 253 S.W.3d 653, 657 (Tex. 2008). The TTCA provides that once the plaintiff elects by filing suit, the TTCA "immediately and forever" bars the plaintiff from suing others in the same capacity. *Molina v. Alvarado*, 463 S.W.3d 867, 870 (Tex. 2015) (citing Tex. Civ. Prac. & Rem. Code Ann. § 101.106(a)–(b)). The Texas Supreme Court explained how the election of remedies provision works in 2018, stating:

> This [election of remedies] provision was incorporated into the TTCA to prevent plaintiffs from circumventing the TTCA's damages cap by suing government employees, who were, at that time, not protected. It was expanded in 2003, as part of a comprehensive effort to reform the tort system, with the apparent purpose of forcing a plaintiff "to decide at the outset whether an employee acted independently and is thus solely liable, or acted within the general scope of his or her employment, such that the governmental unit is vicariously liable."

*Fort Worth Transp. Auth. v. Rodriguez*, 547 S.W.3d 830, 846 (Tex. 2018) (citations omitted). The Texas Supreme Court has warned litigants to "proceed cautiously" before initiating suit under the TTCA because the election has "irrevocable consequences." *Garcia*, 253 S.W.3d at 657.

Generally, Texas Rule of Civil Procedure 65 provides that any subsequent amended pleadings supersede the original filing, but we must defer to the statute if it contradicts the language in a rule. *Univ. of Tex. Health Sci. Ctr. of Hous. v. Rios*, 542 S.W.3d 530, 538 (Tex. 2017); *see also* Tex. R. Civ. P. 65. In 2017, the Texas Supreme Court held that under the TTCA, any subsequent pleadings cannot avoid the plaintiff's irrevocable election to sue the governmental entity employer. *See id.* at 538–39; *see also* Tex. Civ. Prac. & Rem. Code Ann. § 101.106(a). According to Walker, the trial court erred when it rejected his election of remedies argument, which he based on section 101.106(a) of the TTCA. We begin our analysis of Walker's argument by determining whether section 101.106(a) applies to Hartman's suit.

### 1. 101.106(a) – Individual Capacity

Section 101.106(a) of the TTCA provides that "[t]he filing of a suit under this chapter against a governmental unit constitutes an irrevocable election by the plaintiff and immediately and forever bars any suit or recovery by the plaintiff

14

against any individual employee of the governmental unit regarding the same subject matter." Tex. Civ. Prac. & Rem. Code Ann. § 101.106(a). The statute specifically states that an election occurs when the government employer is sued and bars recovery against an *individual employee* of the governmental unit. *See id.* (emphasis added). Our sister court in Houston explained that

> [s]ection 101.106(a) refers to "[t]he filing of a suit under this chapter against a governmental unit;" it does not refer to the numerical designation in the caption of the pleading by which a plaintiff has filed suit against a governmental unit. The dispositive election occurs when the governmental employer is sued—regardless of whether the governmental employer is sued alone or in tandem with the employee, and regardless of whether the governmental employer is sued in the "original" petition or an "amended" petition.

*Hintz v. Lally*, 305 S.W.3d 761, 771 (Tex. App.—Houston [14th Dist.] 2009, pet. denied).[4] "[S]ubsection (a) bars suit against an employee in his individual capacity." *Stinson v. Fontenot*, 435 S.W.3d 793, 794 (Tex. 2014) (citation omitted). "[U]nder subsection (a), suit against a governmental unit under the TTCA—i.e., filing a tort claim against the governmental unit—bars suit against an 'individual employee' of the unit regarding the same subject matter, regardless of whether immunity has been

---

[4] In his brief, Hartman argues *Hintz* supports his argument claiming the TTCA's election of remedies applies *only* to the first petition and not to the contents of amended petitions. We are unpersuaded by his argument: it contradicts *Hintz*. *See Hintz v. Lally*, 305 S.W.3d 761, 771 (Tex. App.—Houston [14th Dist.] 2009, pet. denied).

15

waived." *Ngakoue*, 408 S.W.3d at 357 n.7 (citations omitted). It is well settled that "[t]he plain language of the election-of-remedies provision, then, demonstrates that a suit against the government triggers subsection (a)" and will bar a suit against an employee in his individual, rather than official, capacity. *Alexander v. Walker*, 435 S.W.3d 789, 791 (Tex. 2014).

Hartman filed an original petition in federal court suing Walker, the State of Texas, and Jefferson County. As a district judge, Walker is employed by the State of Texas, not Jefferson County. *See Bloom v. Bexar Cty., Tex.*, 130 F.3d 722, 725 (5th Cir. 1997) (citing Tex. Const. art. V, § 7) ("[S]tate judges are elected officials of the State of Texas and are not agents, officials, or employees of the county."). It is undisputed that Hartman dismissed the State of Texas when he subsequently amended his federal complaint.

That said, the original complaint Hartman filed in federal court included an action against Walker and the State of Texas based on section 1983 of the Federal Civil Rights Act. *See* 42 U.S.C. § 1983. Section 1983 provides a separate and distinct legal basis from the Tort Claims Act for challenging the actions of a governmental employee. *See Thomas v. Allen*, 837 S.W.2d 631, 632–33 (Tex. 1992); *Brand v. Savage*, 920 S.W.2d 672, 675 (Tex. App.—Houston [1st Dist.] 1995, no pet.) ("Moreover, state and federal constitutional claims are not barred by immunity. For

16

example, appellant could have circumvented the Tort Claims Act and its effects by bringing a claim for violation of [their] constitutionally protected rights under 42 U.S.C. § 1983."). "Section 1983 imposes liability for violations of rights protected by the United States Constitution, not for violations of duties of care arising under tort law." *Leo v. Trevino,* 285 S.W.3d 470, 479 (Tex. App.—Corpus Christi 2006, no pet.) (citing *Doe v. Taylor Indep. Sch. Dist.*, 15 F.3d 443, 450 (5th Cir. 1994)); *see also Albright v. Oliver*, 510 U.S. 266, 271 (1994) (explaining that section 1983 provides a "method for vindicating federal rights"). Based on Walker's original federal complaint, we conclude Hartman's section 1983 claims are not claims under the Tort Claims Act. *See Tex. Dep't of Aging & Disability Servs. v. Cannon*, 453 S.W.3d 411, 416 (Tex. 2015).

In his second amended complaint, Hartman dropped his allegations against the State of Texas by failing to allege any claim against them. He sued Walker and other individuals, however, for the "intentionally tortious misconduct of each and all of the individual Defendants." Hartman never asserted a claim against the State of Texas triggering the TTCA. We conclude he is not barred by the election of remedies from suing Walker individually for claims alleging a cause of action under the TTCA. *See* Tex. Civ. Prac. & Rem. Code Ann. § 106.101(a), (e) ("(a) The filing of a suit under this chapter against a governmental unit constitutes an irrevocable

17

election by the plaintiff and immediately and forever bars any suit or recovery by the plaintiff against *any individual employee of the governmental unit regarding the same subject matter. . . .* (e) If a suit is filed under this chapter against both a governmental unit and any of its employees, the employees shall immediately be *dismissed on the filing of a motion by the governmental unit.*" (emphasis added)).

Stated another way, "section 101.106's door swings in just one direction." *Hintz*, 305 S.W.3d at 769. "This one-way door comports with the legislature's goal to address efforts to circumvent the Tort Claims Act's limits by litigants who sued governmental employees *individually instead of their governmental employers*." *Id.* (citation omitted) (emphasis added); *see also Lenoir*, 469 S.W.3d at 675 (citations omitted) ("If the plaintiff sues the governmental unit, she is forever barred from suing the governmental unit's employees[,]. . . [b]ut claims against governmental employees may be pursued if they do not fall within the election of remedies categories created by section 101.106."). For these reasons, we overrule Walker's claim alleging section 101.106(a) of the TTCA applies to Hartman's suit.

### 2. 101.106(f) - Official Capacity

Last, Walker argues the TTCA's election of remedies provision applies and bars Hartman's suit under 101.106(f) because Walker, as a judicial official and in

his official capacity, acted within the scope of his duties to "suppress[] disruption in a courtroom and maintain[] order."

Section 101.106(f) of the TTCA applies when someone sues a governmental employee in his official capacity. *Garza v. Harrison*, 574 S.W.3d 389, 393 (Tex. 2019). "[B]ecause an official-capacity suit against a public employee is merely another way of pleading an action against the governmental employer, on the employee's motion, section 101.106(f) compels an election that makes suit against the governmental employer the exclusive remedy for a public employee's conduct within the scope of employment." *Id.* at 399 (citations omitted). Subsection (f) requires dismissal of a suit against a government employee (1) if the suit is based on "conduct within the general scope of that employee's employment" and, (2) "if it could have been brought under this chapter against the governmental unit[.]" Tex. Civ. Prac. & Rem. Code Ann. § 101.106(f); *see also Lenoir*, 526 S.W.3d at 405. Dismissal under section 101.106(f) is properly reviewed *de novo*. *Garza*, 574 S.W.3d at 400.

Whether subsection (f) applies to the facts that are at issue here hinges on whether Hartman sued Walker in his official capacity. The first step is to determine whether the pleadings allege facts showing that Walker acted within the course and scope of his employment as a district judge when the conduct Hartman claims

19

actionable allegedly occurred. Officials act within the scope of their employment if their acts fall within the duties they are generally assigned. *Ollie v. Plano Indep. Sch. Dist.*, 383 S.W.3d 783, 791 (Tex. App.—Dallas 2012, pet. denied) (citations omitted).

> The scope-of-employment analysis, therefore, remains fundamentally objective: Is there a connection between the employee's job duties and the alleged tortious conduct? The answer may be yes even if the employee performs negligently or is motivated by ulterior motives or personal animus so long as the conduct itself was pursuant to [their] job responsibilities.

*Laverie v. Wetherbe*, 517 S.W.3d 748, 753 (Tex. 2017) (citation omitted). Thus, even if acting to serve the purpose of a third person, as long as the employee's conduct "falls within the duties assigned," the conduct is within the scope of employment. *Anderson v. Bessman*, 365 S.W.3d 119, 125–26 (Tex. App.—Houston [1st Dist.] 2011, no pet.) (citations omitted).

In his original federal complaint, Hartman never disputed Walker's claim that he was, at all relevant times, a State employee. Hartman now argues he is suing Walker for Walker's actions that Hartman argues occurred outside of Walker's scope of employment as a judge. For instance, Hartman suggests:

> Walker's misconduct against Mr. Hartman is totally outside the scope of his jurisdiction pursuant to his individual vendetta against Mr. Hartman and the rule of law. The destruction of evidence, the fabrication of evidence, the unlawful arrest and incarceration, the illegal search and seizure, the denial of Mr. Hartman's right to counsel,

excessive force, malicious prosecution, defamation per se, acts of official oppression, etc., are all outside of the scope of [Walker's] jurisdiction[.]

Hartman states that these actions by Walker, along with the other defendants in the lawsuit, show they acted in a "criminal conspiracy," that caused Hartman to be maliciously prosecuted.

We turn to opinions issued by courts discussing the meaning of the term "scope of employment" to guide our resolution of whether the trial court should have dismissed Hartman's suit based on Walker's claim that his actional conduct occurred completely within his duties as a district judge. One of our sister courts has explained:

> As defined in the TTCA, "scope of employment" means "the performance for a governmental unit of the duties of an employee's office or employment and includes being in or about the performance of a task lawfully assigned to an employee by competent authority." An official acts within the scope of his authority if he is discharging the duties generally assigned to him. The dispositive question is: "[I]n what capacity was the officer acting at the time he committed the acts for which the complaint was made?"

*McFadden v. Olesky*, 517 S.W.3d 287, 296 (Tex. App.—Austin 2017, pet. denied) (citations omitted). Generally, an employee's scope of employment includes conduct the employee engages in while carrying out an assigned task even if the employee's conduct "escalates beyond that assigned or permitted." *Fink v. Anderson*, 477 S.W.3d 460, 466 (Tex. App.—Houston [1st Dist.] 2015, no pet.).

21

Under section 101.106(f) of the TTCA,

> the plaintiff can be compelled to switch targets from the governmental employee to the governmental employer if 'suit is filed against an employee . . . based on conduct within the general scope of that employee's employment and if it could have been brought under [the Texas Tort Claims Act] against the governmental unit.'

*Hintz*, 305 S.W.3d at 769 (quoting Tex. Civ. Prac. & Rem. Code Ann. § 101.106(f)). And the burden to demonstrate that suit "could have been brought under this chapter" against the governmental employer falls on the employee claiming he acted within the scope of his employment. *Id*. An employee must satisfy that burden to obtain an order dismissing the suit under section 101.106(f). *Id.* at 767.

Here, Walker did not provide the trial court with any evidence to support his First Amended Motion to Dismiss for Lack of Subject Matter Jurisdiction. In a prior opinion, we explained that Hartman's allegations that Walker engaged in a civil conspiracy and prosecuted him maliciously following Hartman's arrest, if proven true, is conduct that could fall outside Walker's scope of employment as a judge.

We agree with Walker that he had every right to control order in his courtroom and that his power to accomplish that task fell within his duties as a judge; however, retaliatory actions Hartman alleges Walker took by allegedly joining in a civil conspiracy, or by prosecuting Hartman maliciously, may indeed be shown to be conduct that falls outside the duties Walker had as a judge. *See Walker I*, 516 S.W.3d

22

at 83–84. We conclude Walker failed to carry his burden to produce evidence showing Hartman could have brought his claims under the TTCA against the State. *See* Tex. Civ. Prac. & Rem. Code. Ann. § 101.106(f); *Alexander*, 435 S.W.3d at 792.

For these reasons, we overrule Walker's issues based on sections 101.106(a) and (f) of the TTCA.

## VI.    Conclusion

Having overruled all of Walker's issues, we affirm the trial court's order denying Walker's plea.

AFFIRMED.

_____<br>
CHARLES KREGER<br>
Justice

Submitted on September 12, 2019
Opinion Delivered March 26, 2020

Before McKeithen, C.J., Kreger and Horton, JJ.