

## Fourth Court of Appeals
### San Antonio, Texas

## OPINION

No. 04-18-00842-CV

Ernesto **RIVERA** Jr. and Brandon Torres,
Appellants

v.

Alissa **GARCIA** and Jose Reynaldo Mendez Garcia,
Appellees

From the County Court, Jim Wells County, Texas
Trial Court No. 17-05-57235-CV
Honorable Michael Ventura Garcia, Judge Presiding

Opinion by:     Patricia O. Alvarez, Justice

Sitting:        Sandee Bryan Marion, Chief Justice
                Patricia O. Alvarez, Justice
                Luz Elena D. Chapa, Justice

Delivered and Filed: July 31, 2019

REVERSED AND DISMISSED FOR LACK OF SUBJECT MATTER JURISDICTION

This case stems from the trial court's denial of a motion to dismiss filed pursuant to section 101.106(f) of the Texas Civil Practice and Remedies Code. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 101.106(f). Appellees Alissa Garcia and Jose Reynaldo Mendez Garcia filed suit for defamation, malicious prosecution, and intentional infliction of emotional distress against Appellant Ernesto Rivera Jr. and Brandon Torres, both deputies with the Jim Wells County Sheriff's Office. The deputies appeal alleging their actions were within the scope of their employment and the trial court lacked subject matter jurisdiction. We reverse the trial court's

order denying the motion to dismiss and dismiss the Garcia's suit for lack of subject matter jurisdiction.

## FACTUAL AND PROCEDURAL BACKGROUND

On June 9, 2016, Alissa and Jose Reynaldo Mendez Garcia reported their 2014 black Toyota 4-Runner was stolen to the Jim Wells County Sheriff's Department. Alissa also reported the stolen truck to their insurance carrier. Assistant Chief Deputy Brandon Torres assigned the investigation of the theft of the automobile to Sergeant Ernesto Rivera Jr. During his investigation, Sergeant Rivera accessed a computer software system, available to the Jim Wells County Sheriff's Office through the Enterprise Operation Center and Homeland Security. Sergeant Rivera located several leads for locations of the vehicle based on the vehicle's license plate. Sergeant Rivera then interviewed the Garcias. Based on his investigation, on June 27, 2016, Sergeant Rivera swore out affidavits against both Alissa and Jose Reynaldo Mendez Garcia for filing a false police report, and against Alissa Garcia for insurance fraud. The investigation and affidavits are the bases of the Garcias' malicious prosecution claims.

The Sheriff's Office was subsequently contacted by a Corpus Christi reporter. Assistant Chief Deputy Torres provided an interview with the reporter which is the basis of the Garcias' defamation claim. The intentional infliction of emotional distress claim is based on a combination of both the defamation and the malicious prosecution claims.

On May 30, 2017, the Garcias filed suit for defamation, malicious prosecution, and intentional infliction of emotional distress against Jim Wells County Deputies Brandon Torres and Ernesto Rivera Jr. The Garcias simultaneously filed suit against Coalition Against Insurance Fraud for defamation.

On July 28, 2017, the deputies filed a motion to dismiss for lack of subject matter jurisdiction pursuant to section 101.106 of the Texas Civil Practice and Remedies Code. *See id.*

On November 29, 2017, the trial court heard oral arguments and testimony from the 79th Judicial District Attorney and the Jim Wells County Sheriff; and, on October 31, 2018, the trial court denied the motion to dismiss.

The deputies filed this interlocutory appeal.

## STANDARD OF REVIEW

Because a motion to dismiss filed by an employee pursuant to section 101.106(f) challenges the trial court's subject-matter jurisdiction, an appellate court conducts a de novo review. *Westbrook v. Penley*, 231 S.W.3d 389, 394 (Tex. 2007). Likewise, our determination of the matters involves statutory construction, which is also reviewed under a de novo standard. *See ExxonMobil Pipeline Co. v. Coleman*, 512 S.W.3d 895, 899 (Tex. 2017) (per curiam); *Railroad Comm'n v. Tex. Citizens for a Safe Future & Clean Water*, 336 S.W.3d 619, 624 (Tex. 2011). We apply the plain meaning of the text, absent a different definition provided by the legislature, unless the plain meaning leads to absurd results. *Marks v. St. Luke's Episcopal Hosp.*, 319 S.W.3d 658, 663 (Tex. 2010).

## ARGUMENTS OF THE PARTIES

The deputies contend the uncontroverted evidence establishes the deputies were within the scope of their employment to investigate the reports, arrest the Garcias, and answer the medias' questions; thus, the trial court erred in denying their motion to dismiss pursuant to section 101.106(f) of the Texas Civil Practice and Remedies Code. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 101.106(f).

The Garcias contend the deputies' affidavits were conclusory and contained inadmissible hearsay, the evidence contested that the deputies were in the course and scope of their employment, and the deputies were sued in their individual capacity.

**IMMUNITY UNDER THE TEXAS TORT CLAIMS ACT**

Sovereign immunity and governmental immunity protect the State and its political subdivisions, respectively, from lawsuits and liability. *See Mission Consol. Indep. Sch. Dist. v. Garcia*, 253 S.W.3d 653, 655 (Tex. 2008). The Texas Tort Claims Act provides a limited waiver of that immunity for certain suits against governmental entities. *Id*.; *see also* TEX. CIV. PRAC. & REM. CODE ANN. § 101.021. After the Texas Tort Claims Act's enactment, "plaintiffs often sought to avoid the Act's damages cap or other strictures by suing governmental employees, since claims against [the employees] were not always subject to the Act." *Garcia*, 253 S.W.3d at 656.

Section 101.106(f) of the Tort Claims Act requires the trial court to dismiss a cause of action against a protected employee when the employee's conduct is within the general scope of their employment.

> If a suit is filed against an employee of a governmental unit based on conduct within the general scope of that employee's employment and if it could have been brought under this chapter against the governmental unit, the suit is considered to be against the employee in the employee's official capacity only. On the employee's motion, the suit against the employee shall be dismissed unless the plaintiff files amended pleadings dismissing the employee and naming the governmental unit as defendant on or before the 30th day after the date the motion is filed.

TEX. CIV. PRAC. & REM. CODE ANN. § 101.106(f). Therefore, to obtain a dismissal under section 101.106(f), a party must establish three elements: (1) the suit was filed against an employee of a governmental unit, (2) based on conduct within the general scope of that employee's employment, and (3) that the suit could have been brought under the Tort Claims Act against the governmental unit. *See id*.

**SCOPE OF EMPLOYMENT**

"Scope of employment" is defined in section 101.001(5) of the Civil Practice and Remedies Code as "the performance for a governmental unit of the duties of an employee's office or employment and includes being in or about the performance of a task lawfully assigned to an

employee by competent authority." TEX. CIV. PRAC. & REM. CODE ANN. § 101.001(5). "Could have been brought" applies to all claims "in tort and not under another statute that independently waives immunity," even where the Tort Claims Act does not waive immunity. *See Franka v. Velasquez*, 332 S.W.3d 367, 379–81 (Tex. 2011); *see also Alexander v. Walker*, 435 S.W.3d 789, 790, 792 (Tex. 2014) (per curiam) (including intentional torts under the Tort Claims Act).

"The dispositive question is: '[I]n what capacity was the officer acting at the time he committed the acts for which the complaint was made?'" *McFadden v. Olesky*, 517 S.W.3d 287, 296 (Tex. App.—Austin 2017, pet. denied) (alteration in original). It is, in fact, "an objective assessment of whether the employee was doing [his] job when [he] committed an alleged tort, not [his] state of mind when [he] was doing it." *Laverie v. Wetherbe*, 517 S.W.3d 748, 753 (Tex. 2017); *accord McFadden*, 517 S.W.3d at 296. In other words, the employee's state of mind, motives, and competency are irrelevant; the sole focus is on the actions of the employee. *Garza v. Harrison*, 574 S.W.3d 389, 400 (Tex. 2019).

## PLEADINGS AND EVIDENCE PRESENTED TO THE TRIAL COURT

In deciding a plea to the jurisdiction, "a court may not weigh the claims' merits but must consider only the plaintiff's pleadings and the evidence pertinent to the jurisdictional inquiry." *See Cty. of Cameron v. Brown*, 80 S.W.3d 549, 555 (Tex. 2002). At the time of the motion to dismiss, the trial court considered the Garcias' pleadings, the affidavits of Sergeant Rivera and Assistant Chief Deputy Torres, and the live testimony of the district attorney and the Jim Wells County sheriff.

## A.    Evidence Offered by the Jim Wells County Sheriff's Office Deputies

The testimony of both Sergeant Rivera and Assistant Chief Deputy Torres was offered through the affidavits attached to their motion to dismiss.

### 1.     Sergeant Ernesto Rivera Jr.'s Affidavit

Sergeant Ernesto Rivera Jr. had been employed as a Jim Wells County Deputy Sheriff since 2009 and was the officer primarily in charge of the investigation regarding the Garcias' stolen vehicle.  In his affidavit, he averred as follows:

- In June of 2016, Assistant Chief Deputy Brandon Torres ordered him to investigate a report made by Alissa Garcia and Jose Reynaldo Mendez Garcia regarding their stolen 2014 black Toyota 4-Runner.

- "[His] entire investigation was done during the scope of [his] employment with the Jim Wells County Sheriff's Department and was part of [his] job responsibility."

- All actions he took in the investigation were done in discharging the duties assigned to him as a Deputy Sheriff with the Jim Wells County Sheriff's Department.

- All computer access and witness interviews were conducted during the course and scope of his employment and in the discharge of his duties.

- Based on his investigation, he signed affidavits alleging Alissa Garcia filed a false report to a police officer and committed insurance fraud on June 27, [2016] and Jose Reynaldo Mendez Garcia filed a false report to a police officer on June 27, 2016.

- On June 29, 2016, Jim Wells County Magistrate Judge Jose L. Rodriguez issued arrest warrants for Alissa Garcia and Jose Reynaldo Mendez Garcia.

### 2.     Assistant Chief Deputy Brandon Torres's Affidavit

Assistant Chief Deputy Brandon Torres was employed as a Jim Wells County Deputy Sheriff from November 2007 to August 2016 and was the officer who assigned Sergeant Rivera to investigate the stolen vehicle and provided the interview to the Corpus Christi news reporter.  In his affidavit, Assistant Chief Deputy Torres averred as follows:

- In June 2016, Torres was the Assistant Chief Deputy, and as part of his job responsibilities, and in the scope and course of his employment, he assigned Sergeant Ernesto Rivera, Jr. to investigate a report by Alissa Garcia and Jose Reynaldo Mendez Garcia for the theft of their 2014 black Toyota 4-Runner.

- His job responsibilities and duties were assigned by then Jim Wells County Sheriff Oscar Lopez, Jr.

- Assistant Chief Deputy Torres did not personally perform any investigative work regarding Alissa Garcia and Jose Reynaldo Mendez Garcia.

- In June of 2016 or July of [2016], Jim Wells County Sheriff Oscar Lopez, Jr. ordered him to take part in an interview with a Corpus Christi reporter regarding the arrest of Alissa Garcia.

- "My giving of an interview to [the reporter] was in the course and scope of my employment with the Jim Wells County Sheriff's Department and I took part in the interview and made all statements in the interview as part of discharging my duties and job responsibilities as the Assistant Chief Deputy with the Jim Wells County Sheriff's Department."

## B.    Evidence and Pleadings Offered by the Garcias

### 1.    The Garcias' Pleadings

The Garcias' pleadings included the following statements or allegations supporting their claims that Assistant Chief Deputy Torres and Sergeant Rivera were not acting in the scope of their employment at the time of their alleged acts:

- Assistant Chief Deputy Torres released information to the media that Alissa Garcia "had confessed that her police report regarding a vehicle that had been stolen from her was a lie . . . [and] that she had confessed to insurance fraud and had filed a false police report."

- Assistant Chief Deputy Torres and Sergeant Rivera made false statements of fact regarding Alissa Garcia and held her out in a false and defamatory light suggesting that "she had confessed to insurance fraud and had filed a false police report."

- Sergeant Rivera, either acting alone or with Assistant Chief Deputy Torres, made accusations, intentionally and without probable cause, to secure a warrant for Alissa Garcia's arrest.

- As a result of Sergeant Rivera's false accusations, and accusations without probable cause, Jose Reynaldo Mendez Garcia and Alissa Garcia the Plaintiffs were arrested, incarcerated, required to post bail, and required to retain an attorney and defend themselves against the charges.

- Assistant Chief Deputy Torres had the ability to control Sergeant Rivera's activities and actions.

### 2.    Witnesses Called to Testify at the Hearing

Although neither of the Garcias testified at the hearing, the Garcias called the district attorney and the sheriff to dispute the affidavits of Sergeant Rivera and Assistant Chief Deputy Torres.

a.  District Attorney Carlos Omar Garcia

Carlos Omar Garcia, the District Attorney of the 79th Judicial District, testified the charges against the Garcias were dismissed at the examining trials for lack of probable cause. On cross-examination, however, he testified that "to his knowledge," the case was still under investigation.

b.  Jim Wells County Sheriff Oscar Lopez

Jim Wells County Sheriff Oscar Lopez testified that his officers "[had] the authority to talk to the news media at all given times." When the Garcias' attorney asked if he specifically authorized Assistant Chief Deputy Torres to speak to the reporter about the Garcias, Sheriff Lopez acknowledged that he did not directly authorize the officer to talk to the reporter on that specific occasion. Sheriff Lopez reiterated, however, "we're all—all of the departments [were] authorized to speak to the news media."

On cross-examination, Sheriff Lopez clarified that although he did not authorize Assistant Chief Deputy Torres to speak to the reporter *on that particular occasion*, when Assistant Chief Deputy Torres provided the interview in question, the officer was "discharging his responsibility as assistant chief deputy."

**ANALYSIS**

At issue in this case is whether Assistant Chief Deputy Torres and Sergeant Rivera were acting within the scope of their employment when investigating the Garcias' report of a stolen vehicle and providing an interview to the media. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 101.001(5); § 101.106(f).

**A.  Investigation**

Although the Garcias contend the affidavits to which Sergeant Rivera swore were not based on fact, but only on supposition and conclusions, that is not the question before this court. "The inquiry is whether there is a connection between the employee's job duties and the alleged tortious

conduct." *McFadden*, 517 S.W.3d at 297. The Texas Supreme Court explained, "[t]he answer may be yes even if the employee performs negligently or [was] motivated by ulterior motives or personal animus so long as the conduct itself was pursuant to [his] job responsibilities." *Laverie*, 517 S.W.3d at 753; *see also Alexander v. Walker*, 435 S.W.3d 789, 792 (Tex. 2014) (holding that claims for assault, conspiracy, slander, false arrest, false imprisonment, and malicious prosecution involved conduct within sheriff's department officers' scope of employment). When Sergeant Rivera prepared the affidavits, he was acting in his capacity as a deputy of the Jim Wells Sheriff's office and he was discharging the duties assigned to him by Assistant Chief Deputy Torres. Both officers were acting in the scope of their employment regarding the investigation of the Garcias.

**B.      Media Interview**

During the hearing on November 29, 2017, the Garcias called Sheriff Lopez as a witness. Although Sheriff Lopez testified that he did not directly authorize Assistant Chief Deputy Torres to speak to the media regarding the Garcias, Sheriff Lopez was adamant that his officers, in all of his departments, were authorized to speak to the news media. Additionally, as Assistant Chief Deputy Torres's boss, the sheriff testified that when the deputy was providing the interview, he was discharging the responsibilities and duties of his employment. An officer's scope of employment includes the activities performed in his role as officer, including investigating, arresting, and answering media inquiries. Accordingly, when Assistant Chief Deputy Torres was interviewed by the media, he was acting in his capacity as a deputy of the Jim Wells County Sheriff's Office. As Sheriff Lopez testified, Assistant Chief Deputy Torres was discharging the duties assigned to him even without the sheriff directly authorizing him to do so. In this case, Assistant Chief Deputy Torres was acting in the scope of his employment regarding his contact with the media.

**CONCLUSION**

Based on an objective assessment of the officers' actions, and irrespective of the state of mind of either Sergeant Rivera or Assistant Chief Deputy Torres, we conclude the trial court erred in failing to dismiss the Garcias' suit pursuant to section 101.106(f). *See Laverie*, 517 S.W.3d at 752–53. Accordingly, we reverse the trial court's October 31, 2018 order denying the motion to dismiss and dismiss the Garcia's suit for lack of subject matter jurisdiction. *See id*.; *see also City of Dallas v. Groden*, No. 05-15-00033-CV, 2016 WL 1367380, at *1 (Tex. App.—Dallas Apr. 6, 2016, pet. denied) (mem. op.) (reversing trial court's order denying officers' motions to dismiss based on section 101.106(f) and dismissing appellee's claims).

Patricia O. Alvarez, Justice