**Reversed and Rendered and Opinion filed January 24, 2023.**



In The

# Fourteenth Court of Appeals

---

## NO. 14-22-00338-CV

---

## OSCAR PARDO AND RICARDO EDUARDO PEREZ, Appellants

## V.

## RAFAEL IGLESIAS III, Appellee

---

**On Appeal from the 61st District Court
Harris County, Texas
Trial Court Cause No. 2016-39532**

---

## OPINION

This is an interlocutory appeal from an order denying a motion to dismiss under the Texas Tort Claims Act. The movants argue that they should be dismissed from the suit because the claims against them arise out of conduct falling within the general scope of their employment, and because the suit could have been brought against their employer, a governmental unit. We agree with the movants and hold that they conclusively established that they are entitled to dismissal. We further hold that the nonmovant failed to raise a genuine issue of material fact. We therefore

reverse the trial court's order and render judgment dismissing the movants from the suit.

## BACKGROUND

This case arises out of a disturbance that occurred at a night club, and there are two competing versions of events.

In one version, the plaintiff below, Rafael Iglesias, alleged in his live pleading that he was at the night club when a physical altercation broke out between his friend and three other men. Iglesias came to the aid of his friend, and then two men from the opposing side rushed towards Iglesias. In an act of self-defense, Iglesias struck both of the men and knocked them to the floor. At this point, Iglesias alleged that two off-duty police officers arrived, which brought the conflict with the opposing side to a close.

Though off-duty, the officers were dressed in uniform, and Iglesias claimed that when he saw them, he raised his hands up and signaled that he did not intend to fight. Despite that gesture, Iglesias alleged that the officers tackled him to the ground. They allegedly choked him, hit him with a flashlight, and beat his body until they escorted him out of the night club. According to Iglesias, the officers caused injury to his eyes, ribs, and hip.

Iglesias asserted common law torts against multiple parties, including the two officers, Oscar Pardo and Ricardo Perez. Both officers were sued in their individual capacities, not their official capacities. Their employer, the City of Houston, was not sued at all.

The officers moved to dismiss the claims against them under the Texas Tort Claims Act. The officers specifically invoked Section 101.106(f) of the Texas Civil Practice and Remedies Code, which provides as follows:

2

If a suit is filed against an employee of a governmental unit based on conduct within the general scope of that employee's employment and if it could have been brought under this chapter against the governmental unit, the suit is considered to be against the employee in the employee's official capacity only. On the employee's motion, the suit against the employee shall be dismissed unless the plaintiff files amended pleadings dismissing the employee and naming the governmental unit as defendant on or before the 30th day after the date the motion is filed.

The officers attached evidence to their motion, and the evidence described a second version of events that controverted the factual allegations in Iglesias's live pleading. In a deposition, Officer Pardo testified that he and Officer Perez were working an extra job at the night club with the approval of their supervisor, and that they were alerted by a patron outside of the night club that a disturbance had just occurred inside of the night club. When they investigated the disturbance, they found "a lot of finger pointing and drinks spilled all over the floor." According to Officer Pardo, Iglesias was the center of attention, and a group of individuals was physically restraining him. Because no other person was being held back, the officers believed that Iglesias was the cause of the disturbance. They accordingly escorted Iglesias out of the night club. Officer Pardo denied that they ever struck Iglesias or used any sort of physical force against him. Officer Pardo also testified that by breaking up the disturbance, he was performing "a normal function of an HPD officer."

Iglesias filed a response, which largely focused on the doctrine of official immunity. Iglesias argued that the officers were individually liable and that official immunity did not apply because the officers were not engaged in the performance of a discretionary duty when they assaulted him. He further argued that official immunity should not apply because the officers were acting outside the scope of their authority, and because the officers were not acting in good faith.

3

The trial court signed an order denying the officers' motion to dismiss. The officers now bring this interlocutory appeal of that order, as permitted by Section 51.014(a)(5) of the Texas Civil Practice and Remedies Code. *See Singleton v. Casteel*, 267 S.W.3d 547, 550 (Tex. App.—Houston [14th Dist.] 2008, pet. denied) (stating that Section 51.014(a)(5) "confers jurisdiction upon us to consider an interlocutory appeal based upon a trial court's denial of a motion to dismiss filed pursuant to section 101.106").

## APPLICABLE LAW AND STANDARD OF REVIEW

Section 101.106 of the Texas Tort Claims Act is an election of remedies provision, and it applies to suits involving employees of a governmental unit. Under that statute, the plaintiff must elect to sue either the governmental unit or the employee in his individual capacity. *See* Tex. Civ. Prac. & Rem. Code § 101.106(a)–(b). If the plaintiff files suit against both the governmental unit and the employee, then the employee must be dismissed on a proper motion. *See* Tex. Civ. Prac. & Rem. Code § 101.106(e). If the plaintiff files suit against only the employee in the employee's individual capacity, but the suit is actually based on conduct within the general scope of the employee's employment and could have been brought against the governmental unit, then the suit is considered to be against the employee in his official capacity only, and the employee must also be dismissed on a proper motion. *See* Tex. Civ. Prac. & Rem. Code § 101.106(f); *see also Tex. Adjutant General's Office v. Ngakoue*, 408 S.W.3d 350, 357 (Tex. 2013) (explaining that a suit against an employee in his official capacity "is *not* a suit against the employee; it is, in all but name only, a suit against the governmental unit").

Iglesias only sued the officers in their individual capacities, but the officers moved to dismiss the claims against them, arguing that they could not be held individually liable under Section 101.106(f), and that the proper defendant was their

4

governmental employer. This argument amounted to an assertion of governmental immunity. *See Franka v. Velasquez*, 332 S.W.3d 367, 371 n.9 (Tex. 2011) ("By moving for summary judgment on section 101.106(f), defendants were asserting claims of governmental immunity."). And through that assertion, the officers sought to negate the trial court's subject-matter jurisdiction. *See Ryder Integrated Logistics, Inc. v. Fayette County*, 453 S.W.3d 922, 927 (Tex. 2015) (per curiam) ("Governmental immunity defeats a court's jurisdiction."); *Moore v. Barker*, No. 14-17-00065-CV, 2017 WL 4017747, at \*2 (Tex. App.—Houston [14th Dist.] Sept. 12, 2017, no pet.) (mem. op.) ("A motion to dismiss filed by an employee pursuant to section 101.106(f) is a challenge to the trial court's subject-matter jurisdiction.").

The officers also attached evidence to their motion, and we review a jurisdictional challenge based on the presentation of evidence under the same standard that applies to motions for summary judgment. *See Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 227–28 (Tex. 2004). In other words, we first consider whether the movants conclusively established that the trial court lacks jurisdiction, and if we determine that the movants satisfied that burden, we then consider whether the nonmovant raised a genuine issue of material fact regarding the jurisdictional issue. *Id.* We also examine all relevant evidence, taking as true any evidence favorable to the nonmovant and indulging every reasonable inference and resolving any doubts in the nonmovant's favor. *Id.* at 228. Our review is de novo. *Id.*

**THE OFFICERS' MOTION**

To negate the trial court's jurisdiction, the officers had the burden of proving the following three points: (1) that they were employees of a governmental unit; (2) that the suit against them was based on conduct within the general scope of their employment; and (3) that the suit could have been brought against the governmental

5

unit. *See* Tex. Civ. Prac. & Rem. Code § 101.106(f). The briefing from both parties focuses primarily on the second point, but we address all three points in turn.

## I.     Are the officers employees of a governmental unit?

A governmental unit means "a political subdivision of this state, including any city." *See* Tex. Civ. Prac. & Rem. Code § 101.001(3)(B). The officers established that they are employees of a governmental unit—the City of Houston—because their evidence showed (and Iglesias judicially admitted in his live pleading) that they work for the City of Houston Police Department.

## II.    Is Iglesias's suit based on conduct within the officers' general scope of employment?

Under the Texas Tort Claims Act, scope of employment means "the performance for a governmental unit of the duties of an employee's office or employment and includes being in or about the performance of a task lawfully assigned to an employee by competent authority." *See* Tex. Civ. Prac. & Rem. Code § 101.001(5). When deciding whether conduct satisfies this definition for purposes of Section 101.106(f), the critical inquiry is whether, when viewed objectively, "a connection [exists] between the employee's job duties and the alleged tortious conduct." *See Laverie v. Wetherbe*, 517 S.W.3d 748, 753 (Tex. 2017). We begin this inquiry with a general discussion of an officer's duties.

An officer has a duty to preserve the peace within his jurisdiction. *See* Tex. Code Crim. Proc. art. 2.13(a). He also has a duty to prevent the commission of an offense. *See* Tex. Code Crim. Proc. art. 6.06. Because this latter duty has no territorial constraint, an officer has a duty to stop crime *wherever* it occurs. *See Garza v. Harrison*, 574 S.W.3d 389, 402–03 (Tex. 2019).

An officer also has a duty to stop crime *whenever* it occurs—i.e., even when he is off-duty. *Id.* An officer remains an officer "twenty-four hours a day, which

6

means that a police officer's off-duty status is not a limitation upon the discharge of police authority in the presence of criminal activity." *Id.* "If an off-duty officer observes a crime, as a matter of law he becomes an on-duty officer." *Id.*

Because an officer is always an officer, the capacity in which an officer is acting may raise a question of fact, especially in situations such as this one, where the officer has undertaken private employment during his off-duty hours. *Id.* In such situations, there are two guiding rules. First, if the officer is enforcing general laws in accordance with a statutory grant of authority, then the officer is acting in the course and scope of employment as an officer, even if the officer's conduct also has the incidental effect of benefitting the private employer. *Id.* Second, if the officer is protecting a private employer's property, ejecting trespassers, or enforcing rules and regulations promulgated by the private employer, then there may be a fact question as to whether the officer's conduct is in a private or official capacity. *Id.*

The officers here presented evidence that they were hired by the night club to provide a police presence and to deter crime. Officer Pardo specifically testified that their job was to "enforce the laws, not the club rules."

The officers also presented evidence that they were actually enforcing the general law when they removed Iglesias from the night club. Officer Pardo testified in his deposition that he and Officer Perez "were alerted by a fellow patron or whatever, hey there is a fight or whatever, a disturbance or something." He then described his enforcement decision in the following excerpts from his deposition:

Q.      And does anything stand out to you about that night?
A.      There was a disturbance that night.
Q.      And can you tell me what happened in that disturbance?
A.      We were standing outside the entrance of the establishment and were alerted by [patrons] that there was a disturbance inside and we went inside and there was a large crowd near the dance floor

7

and people yelling, pointing and there was a male off to the right side and he was being held back by people and there was a lot of finger pointing and drinks spilled all over the floor, stuff like that.

Q. What did you do when you encountered that disturbance?

A. We walked towards him, saw that he was the cause of the disturbance and escorted him out.

***

Q. Did you ever have to use physical force with him?

A. No, no, he kind of understood what was going on, we just basically escorted him out.

***

Q. So you just put him outside?

A. Put him outside and basically he advised us he was a Marine and we just said all right, let's get out, don't come back.

***

Q. And in your work as a police officer, is it normal to break up fights?

A. Yes, ma'am.

Q. Is that something you normally do in your police duties?

A. Yes, ma'am.

Q. If you saw a fight out in public, would you try to stop it?

A. Yes, ma'am.

***

Q. Is it important to stop physical assaults if you believe that someone could be physically injured?

A. Yes, ma'am.

Q. That's a normal part of your job duties?

A. Yes, ma'am.

Q. Is it a normal part of being a police officer?

A. Yes, ma'am.

8

Q. If you believed someone was the aggressor in the fight and you threw them out and you knew they were in a fight with other individuals at the bar, would be it be a good idea or bad idea to throw all of them outside at the same time?

A. We didn't see anybody else acting out of character. So he was the only one we saw. He was the only one that attracted our attention. But if there would have been other people, yeah everybody would have been thrown out.

This testimony established that the officers believed that Iglesias was the cause of the disturbance and that they removed him from the night club to bring a stop to the fighting. By escorting Iglesias out of the night club, the officers maintained the peace, which was their job responsibility. *See* Tex. Code Crim. Proc. art. 2.13(a); Tex. Code Crim. Proc. art. 6.06. Thus, even though the officers were off duty, they still established that they had been acting within the general scope of their employment. *See Rodriguez v. Duvall*, No. 14-20-00402-CV, 2022 WL 619710, at *4 (Tex. App.—Houston [14th Dist.] Mar. 3, 2022, no pet.) (mem. op.) (an off-duty police officer, who was working an extra job by providing security during an event at a hotel, was still acting within the scope of his employment when he injured a person while effectuating an arrest because the officer saw that the person was unlawfully possessing drugs); *Moore*, 2017 WL 4017747, at *5 (an off-duty officer, who was working an extra job at a bar, was still acting within the scope of his employment when he injured a patron because the officer was attempting to remove the patron from a disturbance); *Kraidieh v. Nudelman*, No. 01-15-01001-CV, 2016 WL 6277409, at *5 (Tex. App.—Houston [1st Dist.] Oct. 27, 2016, no pet.) (mem. op.) (an off-duty police officer was acting within the scope of his employment when he detained a group of late-night revelers whose behavior had been disturbing the peace).

### III. Could Iglesias's suit have been brought against the City of Houston?

The next question to be resolved is whether Iglesias's claims "could have been brought under [the Texas Tort Claims Act] against the governmental unit." *See* Tex. Civ. Prac. & Rem. Code § 101.106(f). A claim can be brought under the Texas Tort Claims Act if the claim "is in tort and not under another statute that independently waives immunity." *See Franka*, 332 S.W.3d at 381; *see also Mission Consol. Indep. Sch. Dist. v. Garcia*, 253 S.W.3d 653, 659 (Tex. 2008) (providing that all tort theories of recovery alleged against a governmental unit are presumed to be under the Texas Tort Claims Act).

Here, Iglesias alleged claims against the officers for assault and negligence, both of which sound in tort. The claims were also asserted under the common law, and not a statute. Accordingly, the officers established that Iglesias's common law tort claims could have been brought against a governmental unit—i.e., their employer, the City of Houston. *See Alexander v. Walker*, 435 S.W.3d 789, 792 (Tex. 2014) (per curiam) ("Walker's common-law tort claims against the officers therefore could have been brought under the TTCA against the government.").

Based on the foregoing, we conclude that the officers conclusively established their assertion of governmental immunity under Section 101.106(f), which negated the trial court's subject-matter jurisdiction. The burden therefore shifted to Iglesias to raise a fact question on this jurisdictional issue.

### IGLESIAS'S RESPONSE

Iglesias does not appear to have made any arguments concerning the first or third points in the officers' jurisdictional analysis. But he does make several arguments concerning the second point. To raise a fact question as to that point, Iglesias had to produce some evidence that the officers were not acting within the general scope of their employment—or stated another way, Iglesias needed more

than a scintilla of evidence to show that the officers were engaged in "an independent course of conduct not intended by the employee[s] to serve *any* purpose of the[ir] employer." *See Garza*, 574 S.W.3d at 400. As explained below, we conclude that Iglesias failed to produce such evidence.

Iglesias only attached two items of evidence to his response. The first was an indictment showing that Officer Pardo had been criminally charged in an unrelated incident. And the second was a full copy of Officer Pardo's deposition (because the officers had only attached selected excerpts to their motion). None of this evidence supported Iglesias's factual allegations that he was tackled, choked, hit, or beaten by the officers. Even if we treated Iglesias's live pleading as evidence, such that there was a fact issue as to whether the officers had used physical force against Iglesias, that dispute would not change the jurisdictional analysis because there was no still evidence controverting Officer Pardo's deposition testimony that the officers removed Iglesias from the night club in order to end the disturbance. Assuming that the officers tortiously injured Iglesias during that removal process, the officers' conduct still had a clear connection with their job duties—i.e., maintaining the peace—which means that Iglesias's suit is based on conduct within the general scope of the officers' employment. *Id.* at 394 ("Even if work is performed wrongly or negligently, the inquiry is satisfied if, when viewed objectively, a connection exists between the employee's job duties and the alleged tortious conduct."); *id.* at 404 (concluding that the officer was acting in the scope of his employment, notwithstanding the factual dispute as to whether the attempted arrest was improper).

In any event, Iglesias did not draw attention to any factual dispute regarding the officers' alleged use of physical force, either in his response below or in his appellee's brief in this court. Instead, Iglesias's main argument in the trial court was that the officers were not entitled to official immunity. Iglesias repeats that point to

a lesser degree in his appellee's brief, insofar as he argues that the officers' conduct was not discretionary. But that argument has no bearing on the statutory inquiry raised by the officers in their motion to dismiss. *Id.* at 399–400 ("Unlike official immunity, which is an affirmative defense that bars a governmental employee's individual liability, section 101.106(f) essentially prevents an employee from being sued at all for work-related torts and instead provides for a suit against the governmental employer.").

Iglesias also argued in his trial response that the officers were not entitled to relief under Section 101.106(f) because they did not personally witness the commission of a crime. Iglesias has made this argument the primary focus of his appellee's brief, and he believes that many of the cases cited by the officers in their appellants' brief are distinguishable because the courts there determined that an off-duty officer became an on-duty officer when the officer observed a crime committed in his presence. *E.g., id.* at 404 ("Once Garza saw Santellana in possession of marijuana he immediately became an on-duty peace officer enforcing general laws."); *Rodriguez*, 2022 WL 619710, at *4 ("Following this logic, Duvall immediately became an on-duty police officer when he purportedly saw Rodriguez attempting to conceal or destroy marijuana."); *Moore*, 2017 WL 4017747, at *5 ("Once Moore observed Barker physically strike or threaten to strike the other man, he had a duty as a police officer to intervene in the situation to prevent or suppress the crime."). Iglesias correctly notes that Officers Pardo and Perez did not witness a crime, but that does not foreclose the officers' relief, as none of the cited cases holds that an off-duty officer must observe a crime in his presence before he can take action pursuant to his job-related responsibilities.

An on-duty officer can stop and investigate a suspect after receiving a report that the suspect committed a crime, even if the officer did not personally witness the

crime, so long as the stop is supported by reasonable suspicion. *See Smith v. Heap*, 31 F.4th 905, 911 (5th Cir. 2022). An off-duty officer can take similar actions upon a reasonable suspicion that a crime has been committed, is being committed, or is about to be committed. *See CKJ Trucking, L.P. v. City of Honey Grove*, 581 S.W.3d 870, 877 (Tex. App.—Dallas 2019, pet. denied) ("An officer's public duty can also be triggered by reasonable suspicion."). This reasonable-suspicion rule is consistent with an officer's duty and statutory grant of authority to prevent crime before it occurs. *See* Tex. Code Crim. Proc. art. 2.13(a) ("It is the duty of every peace officer to preserve the peace within the officer's jurisdiction."); Tex. Code Crim. Proc. art. 6.06 ("Whenever, in the presence of a peace officer, or within his view, one person is about to commit an offense . . . it is his duty to prevent it.").

The reasonable-suspicion rule also has direct application here. The officers were told that a fight or disturbance had occurred inside the night club. They saw drinks spilled all over the floor. And they saw Iglesias being restrained by other patrons. Based on those specific and articulable facts, and the rational inferences that can be made from those facts, there was reasonable suspicion for the officers to conclude either that Iglesias had struck another person (as Iglesias admitted in his live pleading), or that he might strike another person if no action were taken. *See State v. Duran*, 396 S.W.3d 563, 568–69 (Tex. Crim. App. 2013) (stating that the critical part of the reasonable-suspicion analysis is whether an officer's action is supported by "specific and articulable facts"). The officers' decision to remove Iglesias had a clear connection to their job duties, which were to enforce the law and to maintain the peace. Any failure on the part of the officers to investigate the facts more closely, or to arrest or charge Iglesias with an offense, does not change this analysis. *See Moore*, 2017 WL 4017747, at *5 (holding that an off-duty officer was acting within the general scope of his employment when he removed an unruly

13

patron from a bar even though the patron "was not arrested for any offense such as breach of the peace or assault involving the other bar patron"); *Kraidieh*, 2016 WL 6277409, at \*5 (holding that an off-duty officer was acting within the general scope of his employment even though he "neglected to file a police report and did not arrest or cite anyone"); *id.* at \*6 ("Whether an employee is acting within the 'scope of employment' depends on whether he was performing the duties of his governmental employer's office, not on how adequately he performed such duties.").

In one final argument, Iglesias counters in his appellee's brief that Officer Pardo actually admitted that he did not have a reasonable suspicion that a crime had been committed. Iglesias bases this argument on the following deposition testimony:

> Q.    Okay. Did you try to find out if [Iglesias] was the victim or the aggressor?
>
> A.    No, we didn't see any injured parties, nobody was bleeding on the floor, stuff like that, there was nothing to be hey, let's detained [sic] this guy, this guy is bleeding on his head, this guy is knocked out. None of that.

This testimony does not amount to an admission that Officer Pardo had no reasonable suspicion, or that he believed that no fight or crime had occurred. This testimony merely establishes that Officer Pardo did not observe anyone who was obviously injured at the time that he and Officer Perez entered the night club and brought an end to the disturbance. Moreover, in a follow-up question on the same page of the deposition transcript, Officer Pardo testified that, after he removed Iglesias from the night club and then returned to make sure that the scene had been cleaned up, he was never advised that a different patron had been responsible for the disturbance. That testimony supports Officer Pardo's reasonable suspicion that Iglesias had been the cause of the disturbance.

The officers' evidence established that they had engaged in conduct to enforce the general law, which means that they not only maintained the peace for the other patrons, but they also served the larger public purpose of their governmental employer. The mere fact that the night club, as the officers' private employer, may have also benefitted from their conduct does not negate the connection between the officers' conduct and their official duties. *See Garza*, 574 S.W.3d at 404 (concluding that an off-duty officer was acting within the scope of his employment even though the officer's conduct also benefitted his private employer). Nor does it raise a genuine issue of material fact as to whether the officers were acting within the general scope of their employment. To have raised such a fact issue, Iglesias was required to show that the officers' conduct did not serve "any purposes" of their governmental employer. *Id.* at 400. Iglesias could have satisfied that burden with some evidence that the officers were only protecting the night club's property, that they were only ejecting a trespasser at the request of the night club, or that they were only enforcing rules and regulations promulgated by the night club. *Id.* at 403. Because no such evidence was produced here, we conclude that Iglesias failed to raise a fact issue as to whether the officers were acting within the general scope of their employment with their governmental employer.

We likewise conclude that Iglesias failed to raise a fact issue as to the officers' jurisdictional challenge, and that the trial court reversibly erred by denying the officers' motion to dismiss.

## CONCLUSION

The trial court's order denying the officers' motion to dismiss is reversed and judgment is rendered dismissing the officers from the lawsuit.

15

/s/    Tracy Christopher
Chief Justice


Panel consists of Chief Justice Christopher and Justices Bourliot and Wilson.